# IN THE COURT OF APPEALS OF IOWA

No. 14-1795
Filed March 11, 2015

**IN THE INTEREST OF H.H. AND N.H.,**
**Minor Children,**

**N.H., Mother,**
**Appellant.**

_____

Appeal from the Iowa District Court for Dallas County, Virginia A. Cobb, District Associate Judge.

A mother appeals from the termination of her parental rights to her children. **AFFIRMED.**

Thomas P. Graves of Graves Law Firm, P.C., Clive, for appellant mother.

Thomas J. Miller, Attorney General, Kathryn K. Lang, Assistant Attorney General, Wayne Reisetter, County Attorney, and Sean P. Wiser, Assistant County Attorney, for appellee State.

Victoria Meade, West Des Moines, attorney and guardian ad litem for minor children.

Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**DOYLE, J.**

A mother appeals from the termination of her parental rights to her children, H.H., born in 2009, and N.H., born in 2007.[1] We affirm.

## I. *Background Facts and Proceedings*

This family came to the attention of the Iowa Department of Human Services (DHS) in July 2012, upon receiving information the mother was using and manufacturing methamphetamine. The mother was found to have methamphetamine in her system while parenting the children. The mother and father also had a history of domestic violence taking place in the family home.

An ex parte removal order was entered on July 19, 2012, and affirmed the next week following an evidentiary hearing. The children were placed in several homes before being adjudicated children in need of assistance (CINA) in December 2012. At that point, DHS transferred the children to a pre-adoptive foster home, where they have remained.

The foster mother began taking N.H. to a therapist. Following the therapist's recommendation, the children's guardian ad litem asked the district court to suspend the parents' one-hour-per-week supervised visits with the children. The court temporarily suspended the visits, and following an evidentiary hearing, confirmed the suspension of visits. On appeal of the district court's order suspending visitation, this court reversed the court's modification of the dispositional order and remanded for reinstatement of visitation, concluding "the State did not establish good cause for a complete cessation of the already

---

[1] By an order filed February 6, 2015, the Iowa Supreme Court dismissed the father's appeal of the termination of his parental rights as untimely.

limited visits the department authorized." *In re H.H.*, No. 13-0714, 2013 WL 3864592, at *3 (Iowa Ct. App. July 24, 2013).

The district court ordered DHS to restore supervised visitation between the parents and the children. The mother missed visits on September 3, September 17, October 8, October 15, October 23, November 12, and December 10, 2013, and March 4, March 25, April 1, and April 8, 2014. Several of the visits were made up. The father's visits ceased when he became incarcerated.[2] The children exhibited negative behavior following visits with the mother. Due to a number of concerns with the parents' volatile behavior and unresolved mental health and substance abuse issues, visits did not progress beyond fully supervised visits, although the caseworker testified nothing occurred during the fully supervised visits "that [she] would have to end a visit for."

Meanwhile, the mother completed a clinical treatment assessment in May 2013, which recommended extensive outpatient therapy for mental health concerns as well as substance abuse treatment. The mother attended four sessions with a therapist, but did not complete "any kind of treatment"; she subsequently testified her assessment did not recommend any treatment. The mother tested positive for methamphetamine in October 2013, and missed four other drug screens.

The mother had a number of run-ins with law enforcement. In March 2013, police officers responded to a fight between the mother and father at their home. In May 2013, the mother was arrested and charged with interference with official acts, public intoxication, assault on a police officer, and assault on a

---

[2] The father began serving a five-year prison term in January 2014.

healthcare provider. In August 2013, the mother contacted police twice to report actions by the father. In September 2013, police went to the mother's home to arrest the father on an outstanding warrant; the mother was charged with interference with official acts after she denied knowing the father (as the father escaped through a second-story window). At that time, the mother was also charged with possession of a controlled substance, possession of drug paraphernalia, and accessory after the fact. In October 2013, the mother was arrested for a probation violation after she tested positive for methamphetamine. In November 2013, the mother filed for a protective order against the father, which she later dismissed.

The State filed a petition to terminate parental rights on July 26, 2013. The termination hearing began on January 29, 2014. At the time, the mother was living in a one-bedroom apartment, but did not know how she was going to pay rent because she was not employed. The court continued the hearing to April 1, 2014. At the time, the mother had been evicted from her apartment and was living with a friend, but had obtained employment.

At the hearing, caseworkers described there being "some sort of bond" between the children and the parents, and stated the children "are excited to see them" but "often times refer to them [by their first names]" outside of visits. The case manager testified the mother "never really has addressed her mental health issues and substance abuse issues," and stated "visits are still supervised because [the mother] did not address [her] substance abuse or [her] mental health so we could not go semi-supervised and we couldn't go unsupervised." The case manager further testified the same concerns about the mother's

behavior were present at the time of the termination hearing as existed "when the case was started," stating the mother's "combativeness, the volatile behavior, especially when I'm there, is still evident whenever I see her." Caseworkers and the guardian ad litem recommended termination of parental rights, and asked the court to deny the mother's request for additional time.

Following the termination hearing, the court entered its order terminating the mother's parental rights to pursuant to Iowa Code sections 232.116(1)(d) and (f) (2013). The court observed "[t]he same issues that presented at the start of this case in 2012 are still present without any particular improvement," including "issues with domestic violence, drug use, criminal charges, financial instability and homelessness." The court further observed, "[The mother] provide[s] excuses for not complying with the court's orders for services, but never take[s] any responsibility for [her] own actions or lack of compliance." The court determined, "[T]he Court sees no likelihood that an additional period of six months will change the circumstances. [The mother] cannot provide a home for these two children[.]"

The mother appeals.[3] We conduct a de novo review of termination-of-parental-rights proceedings. *In re P.L.*, 778 N.W.2d 37, 40 (Iowa 2010).

---

[3] Because the mother did not raise her reasonable-efforts claim prior to the termination hearing, we decline to address it. While the State has an obligation to provide reasonable reunification services, the parent has an equal obligation to demand other, different, or additional services *prior to the termination hearing*." *In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct. App. 1999) (emphasis added). When a parent alleging inadequate services fails to demand services other than those provided, the issue of whether services were adequate is not preserved for appellate review. *Id.*

*II.     Discussion*

The mother challenges the termination of her parental rights as to all sections relied on by the juvenile court.   We may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence.  *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).   Section 232.116(1)(f) provides that termination may be ordered when there is clear and convincing evidence a child age four or older, who has been adjudicated CINA and removed from the parents' care for the last twelve consecutive months, cannot be returned to the parents' custody at the time of the termination hearing.   There is clear and convincing evidence to support termination of the mother's parental rights to H.H. and N.H. pursuant to this section.

Giving primary consideration to the "the child's safety, . . . the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child," we conclude termination of the mother's parental rights will best provide the children with the permanency they deserve.  *See* Iowa Code § 232.116(2).

We further conclude an extension of time in this case would not correct the situation.  "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *P.L.*, 778 N.W.2d at 41; *see In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) (noting the parent's past conduct is instructive in determining the parent's future behavior).   Children are not equipped with pause buttons.   "The crucial days of childhood cannot be suspended while parents experiment with

ways to face up to their own problems." *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). At some point, as is the case here, the rights and needs of the children rise above the rights and needs of the parent. *See In re C.S.*, 776 N.W.2d 297, 299 (Iowa Ct. App. 2009). There is no reason to delay the children the permanency they need and deserve.

We affirm the juvenile court's determination that termination of the mother's parental rights was proper under Iowa Code section 232.116(1)(f).

### III.    *Conclusion*

There is clear and convincing evidence that grounds for termination exist, nothing in the record suggests additional time would correct the circumstances leading to the children's adjudication and removal, termination of parental rights is in the children's best interests, and no consequential factor weighing against termination requires a different conclusion. Accordingly, we affirm termination of the mother's parental rights.

**AFFIRMED.**