## IN THE COURT OF APPEALS OF IOWA

No. 15-0444
Filed July 22, 2015

**IN THE INTEREST OF K.L.,**
   **Minor Child,**

**D.F., Mother,**
   Appellant.

_____

Appeal from the Iowa District Court for Polk County, Rachael Seymour, District Associate Judge.

A mother appeals the termination of her parental rights to her seven-year-old son. **AFFIRMED.**

Judy Johnson of Borseth Law Office, Altoona, for appellant.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, John P. Sarcone, County Attorney, and Amanda Johnson, Assistant County Attorney, for appellee.

Alexandra Nelissen of Nelissen Law Firm, Des Moines, for father.

Nicole Nolan of Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., McDonald, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**TABOR, P.J.**

Although Dawn asserts she is "comfortable in her sobriety," she has been unwilling to end her relationship with a paramour who continues to use methamphetamine. The juvenile court concluded Dawn's dishonesty about her continuing intimacy with that drug user posed a risk to her seven-year-old son K.L. and, therefore, terminated the parent-child relationship.

Dawn challenges the juvenile court's decision, claiming the State did not offer clear and convincing evidence of the grounds for termination. *See* Iowa Code § 232.116(1)(d), (f) (2013). Dawn also contends termination is not in her son's best interests because of the closeness of their relationship. *See* Iowa Code § 232.116(2), (3)(c). After a de novo review of the record, but with due deference to the juvenile court's credibility determinations, we affirm the termination of Dawn's parental rights.

Authorities took notice of Dawn's family in May 2012. Law enforcement executed a search warrant at the house where Dawn and her son were living with her mother and brother. Officers found various drugs and drug paraphernalia in the home. Dawn and K.L. both tested positive for methamphetamine. Dawn also tested positive for marijuana and amphetamines. The Iowa Department of Human Services (DHS) removed K.L. from his mother's custody on May 14, 2012, and placed him with his paternal aunt. On June 5, 2012, the juvenile court adjudicated K.L. as a child in need of assistance (CINA) under Iowa Code section 232.2(6)(b), (c)(2), (n), and (o) (2011).

Dawn entered treatment at the House of Mercy and made significant improvements regarding her addiction. But counselors expressed concerns Dawn did not fully grasp certain insights needed to maintain sobriety; she was discharged from substance abuse treatment for lack of behavioral changes. Dawn did not attend meetings for Alcoholics Anonymous or Narcotics Anonymous (AA/NA) and did not line up a sponsor to help her deal with substance abuse issues. But the biggest concern was Dawn's inability to recognize the danger of continuing her long-term relationship with Marshall, who still used drugs, including methamphetamine. Dawn had associated with Marshall for fifteen years, though Marshall was not K.L.'s father. Despite advising her case workers that she did not have an ongoing intimate relationship with Marshall, the two had a child together during the course of the CINA proceedings involving K.L.[1]

The State filed a petition to terminate her parental rights in August 2013. But the petition was dismissed when the State agreed that Dawn had improved in obtaining stability and addressing her substance abuse issues. This improvement continued to the point that K.L. was returned to Dawn's care on February 4, 2014. But later that spring, the State learned that Marshall had relapsed into drug use and Dawn continued her interaction with him. In May 2014, the State sought to again remove K.L. from Dawn's care because she was not being honest with the DHS and service providers regarding the safety plan, which prohibited contact between K.L. and Marshall.

---

[1] Dawn had custody of that child until the second day of the termination hearing when the State asked for the child to be removed. The juvenile court signed a removal order.

The juvenile court determined Dawn allowed Marshall to have contact with K.L. on at least three occasions, even after she reported Marshall had relapsed into drug use. At the removal hearing, the court warned Dawn that contact with Marshall would be an impediment to reunification with K.L., and Dawn said she understood. The court removed K.L. from Dawn's care and required supervised visitation.

The State filed the second petition to terminate parental rights on September 12, 2014. The juvenile court held a hearing on the termination petition on December 16 and 17, 2014. The bulk of the testimony concerned Dawn's association with Marshall. Dawn gave inconsistent responses regarding the status of their relationship. Eventually, she testified: "My relationship with Marshall right now is confusing. Right now it's not an intimate committed relationship. It still remains an on-the-table relationship. I don't know what's going to happen with it." Dawn also insisted her "grown-up relationship with Marshall, whatever it may be, does not reflect on the care or the love or the relationship or bond I have with my child." The Family Safety, Risk and Permanancy (FSRP) worker, who initially was supportive of reunification, changed her opinion when informed of the ongoing relationship.

In its ruling terminating parental rights, the juvenile court viewed Dawn's testimony as lacking insight regarding "how her relationships with others impact her children." The court faulted Dawn for turning a blind eye to the severity of Marshall's relapse into methamphetamine use and minimizing his impact on her own recovery and parenting abilities. The court's March 1, 2015, order

terminated Dawn's parental rights under Iowa Code sections 232.116(1)(d) and (f) (2013).[2] Dawn now appeals.

We review termination of parental rights proceedings de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We defer to the district court's factual findings, especially when determining the credibility of witnesses, but are not bound by them. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). The child's best interest is the paramount concern. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).

## I.     Statutory Grounds

Clear and convincing evidence of the statutory grounds is required for termination. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence. *Id.* When the juvenile court orders termination of parental rights on more than one statutory ground, we need only find support for one ground to affirm. *In re J.B.L.*, 844 N.W.2d 703, 704 (Iowa Ct. App. 2014). We conclude the State proved by clear and convincing evidence that termination was appropriate under section 232.116(1)(f).

To terminate under paragraph (f), the State must prove the child is four years old or older, has been adjudicated CINA, has been removed from the home for the required period of time, and the court could not return the child to the parent's custody at the present time pursuant to section 232.102. Iowa Code

---

[2] The father's parental rights were also terminated, but he is not a party to this appeal.

§ 232.116(1)(f)(1)–(4). Only the fourth element is at issue: could K.L. be safely returned home?

"At the present time" refers to the point of the termination hearing. *See A.M.*, 843 N.W.2d at 111. A child cannot be returned to the custody of a parent under section 232.102 if by doing so the child would be exposed to any harm amounting to a new CINA adjudication or that the child is imminently likely to suffer that harm if returned. *In re A.M.S.,* 419 N.W.2d 723 725 (Iowa 1988); *see also In re M.M.,* 483 N.W.2d 812, 814 (Iowa 1992) (explaining the threat of probable harm will justify termination).

Dawn argues on appeal that the evidence did not show K.L. was "imminently likely to suffer an adjudicatory harm" if he was returned to her care. She contends Marshall's "incidental contact with the minor child and the general statements by Dawn that [he] may have relapsed at some unknown point in time, do not rise to the level of clear and convincing evidence."

It is true that the focus of these termination proceedings was not on Dawn's own substance abuse, but her unwillingness to end a fifteen-year relationship with Marshall despite knowing his drug problems were not resolved. Dawn testified she was "comfortable in her sobriety" and was seeing a therapist to address the challenges of staying off drugs. But the case workers were concerned about her disinclination to participate in NA/AA meetings and lack of a sponsor, believing those circumstances would make relapse more likely. And they were very worried about her close association with Marshall.

Marshall has a long history of drug abuse and controlled substance convictions. When K.L. was returned to Dawn's care in February 2014, Marshall was providing clean drug screens and complying with DHS recommendations. But in May 2014, Marshall stopped attending services and even Dawn suspected he had begun to use drugs again. At the June 2014 removal hearing, months prior to termination, the court warned Dawn about interacting with Marshall:

> The Court: [Dawn] under no circumstance while you are having contact with the child should Marshall be near the child, period. This court does not care if it's for five minutes or five seconds. If that was not clear by the [DHS] or the FSRP worker, this court is making it part of the order of this court that Marshall not be around the child of interest. Do you understand?
> Dawn: Yes, Your Honor.

In October 2014, Marshall was arrested and pleaded guilty to possession of drug paraphernalia. He admitted using methamphetamine. Nevertheless, Dawn continued to maintain a romantic relationship with him and allowed him to have at least some level of contact with K.L. Dawn allowed K.L. to be considered an inaccurate reporter when the child told social workers about his interactions with Marshall.

During the course of the proceedings, Dawn has been untruthful with service providers and the juvenile court. The court noted her dishonesty in the termination order, and found it unlikely Dawn would truly end the relationship with Marshall, regardless of the cost to K.L. We give deference to the juvenile court's credibility determinations, especially given the court's opportunity to observe this family over the three-year course of the CINA proceedings.

We acknowledge the significant progress that Dawn has made during the course of this case. The FSRP worker described Dawn's parenting style as "warm" and "affectionate." Dawn was playful with K.L. and found creative ways to interact with him during visits. Dawn has maintained steady part-time employment and suitable housing, though the record suggested that she may have been relying on financial support from Marshall to make ends meet.

But in the end, we share the district court's concern that Dawn's blind spot for the danger posed by her paramour's use of methamphetamine cannot be overlooked. Our supreme court has recognized the hazards of unaddressed methamphetamine addictions. *In re A.B.*, 815 N.W.2d at 776. Dawn's continued association with a drug user, despite knowing it could result in the termination of the parental rights of her child, shows K.L. could not be returned to her care at the time of the hearing.

## II.    Best Interests

Even if the statutory grounds are met, termination must be in the child's best interest. We determine a child's best interests by giving "'primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child.'" *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010) (quoting Iowa Code § 232.116(2)). Dawn argues termination was not in the best interests of K.L. because she was prepared to meet his physical, mental, and emotional needs.

While Dawn has made progress in achieving stability, the record shows she is unwilling to place her child's long-term needs ahead of her own complicated relationship with a drug user. In a telling passage from her testimony at the termination hearing, Dawn acknowledged that if she were not maintaining contact with Marshall, she could be reunited with K.L., but expressed: "They're both important [to me]."

The record reflects K.L. is doing well in his current placement. Meanwhile, given the reasons stated above, K.L.'s safety would remain a concern if he were to be returned to Dawn's care. K.L.'s needs must take priority over Dawn's confusion about her romantic relationship. *See In re C.S.*, 776 N.W.2d 297, 299 (Iowa Ct. App. 2009). Termination is in K.L.'s best interests.

## III.    Factors Allowing Court to Forgo Termination

Finally, Dawn argues the juvenile court should have applied section 232.116(3)(c) to save the parent-child relationship. The court need not terminate if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). This factor is permissive and the court has the discretion to weigh the strength of the bond against the child's welfare. *See A.M.*, 843 N.W.2d at 113; *P.L.*, 778 N.W.2d at 39.

We have no doubt that Dawn and K.L. love each other, but we do not find clear and convincing evidence in the record that termination would be detrimental to K.L. because of the closeness of their relationship.

**AFFIRMED.**