# IN THE COURT OF APPEALS OF IOWA

No. 16-0124
Filed March 9, 2016

**IN THE INTEREST OF C.C.,**
**Minor Child,**

**A.C., Father,**
Appellant.
_____

Appeal from the Iowa District Court for Warren County, Mark F. Schlenker, District Associate Judge.

A father appeals the termination of his parental rights. **AFFIRMED.**

John C. Heinicke of Kragnes & Associates, P.C., Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant Attorney General, for appellee State.

M. Kathryn Miller of the Des Moines Juvenile Public Defender, Des Moines, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**DOYLE, Judge.**

A father appeals the termination of his parental rights to his child, C.C.[1] He concedes the State proved by clear and convincing evidence the elements necessary to satisfy the grounds upon which his rights were terminated. Instead, he argues the juvenile court failed to consider the best interests of the child and erred in finding that the exceptions to termination found in Iowa Code section 232.116(3) (2015) did not apply. Acknowledging that because of his present incarceration, he cannot presently take custody of the child, he asks the court for additional time so that when he has completed his treatment program, he can take custody of the child. We review termination-of-parental-rights proceedings de novo. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).

The three-step statutory framework governing the termination of parental rights is well established and need not be repeated here. *See In re P.L.*, 778 N.W.2d 33, 40-41 (Iowa 2010). Upon our de novo review, we find the juvenile court issued a thorough and well-reasoned ruling terminating the father's parental rights, and we adopt its findings of fact and conclusions of law as our own.

The father has a long history of substance abuse and incarceration. He has made numerous attempts at drug counseling and therapy, which has included both in-patient and outpatient treatment. He was counseled for heroin and opiate addiction at the Iowa Residential Treatment Center. He then started using methamphetamine, trading one addiction for another.

C.C. was born in March 2014, and the father was released from prison for the second time shortly thereafter in July 2014. He started using

---

[1] The mother's parental rights were also terminated. She has withdrawn her appeal.

methamphetamine with the mother on a regular basis in August 2014, including times when C.C. was in their home. Due to the mother's jail sentence, the child was removed from his mother's care in January 2015 and was placed in the care of relatives. The father was not deemed suitable for placement because he tested positive for methamphetamine.

The father continued using until his arrest in June 2015. In November 2015, the father was sentenced to consecutive terms totaling eight years' incarceration, but he was granted probation for two years and sentenced to a residential treatment facility for maximum benefits. He was incarcerated at the time of the December 2015 hearing and awaiting placement into the twelve-month inpatient-treatment program, during which time he could not have custody of the child. At the time of the December 2015 termination hearing, C.C. was less than two years old.

As we have stated numerous times, children are not equipped with pause buttons. "The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). While the law requires a "full measure of patience with troubled parents who attempt to remedy a lack of parenting skills," this patience has been built into the statutory scheme of chapter 232. *In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000). Our supreme court has explained that "the legislature, in cases meeting the conditions of [the Iowa Code], has made a categorical determination that the needs of a child are promoted by termination of parental rights." *In re M.W.*, 458 N.W.2d 847, 850 (Iowa 1990) (discussing then Iowa Code section 232.116(1)(e)). Consequently, "[t]ime is a critical element," and

parents simply "cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting." *C.B.*, 611 N.W.2d at 495. At some point, as is the case here, the rights and needs of the child must rise above the rights and needs of the parent. *See In re C.S.*, 776 N.W.2d 297, 300 (Iowa Ct. App. 2009). The public policy of the state having been legislatively set, we are obligated to heed the statutory time periods for reunification.

In its ruling, the juvenile court noted the father had almost a year to resolve the issues that caused the child to be removed and had made no progress, even when facing the potential prospect of termination of his parental rights. After our de novo review of the record, we agree with the court's finding that there is insufficient evidence to merit granting the father any additional time for resolution of the matters that gave rise to the case. We likewise concur with the juvenile court's conclusion that the child should not and does not have to wait to see if his father can kick his drug habit after another year of counseling. Even the father agreed that C.C. should not have to wait until at least December 2016 to know where he is going to stay. All the father could say was, "I think it's the best thing for him to be with his mother and father." We conclude any additional time in limbo would not be in the child's best interests.

For the same reasons, we agree with the juvenile court that terminating the father's parental rights would be less detrimental to the child than the harm that would be caused by continuing the parent-child relationship. *See* Iowa Code § 232.116(3)(c) (permitting the juvenile court to eschew termination of parental rights if it finds there is clear and convincing evidence the termination would be

detrimental to the child due to the closeness of the parent-child relationship). Though the record discloses a bond between the father and the child, the juvenile court's assessment is spot on—the long range prospects of the child "growing up healthy and nurtured with these parents are minimal at best." The child would be required to continue in foster care or relative placement while awaiting for the father to resolve his longstanding substance-abuse issues—the issues which precipitated the juvenile court proceedings. After reviewing all the evidence, we agree with the juvenile court that termination is in the child's best interests and that none of the mitigating factors in section 232.116(3) apply to overcome that determination.

Accordingly, we affirm the juvenile court's order terminating the father's parental rights.

**AFFIRMED.**