776 N.W.2d 297 (2009)
In the Interest of C.S., Minor Child,
S.L.S., Mother, Appellant,
M.R.S., Sr., Father, Appellant.
No. 09-0988.
Court of Appeals of Iowa.
October 7, 2009.
*298 Daniel McClean of McClean Law Offices, Dyersville, for appellant father.
William A. Lansing of William A. Lansing, P.C., Dubuque, for appellant mother.
Thomas J. Miller, Attorney General, Kathrine Miller-Todd, Assistant Attorney General, Ralph Potter, County Attorney, and Jean Becker, Assistant County Attorney, for appellee State.
Mary Kelley, Assistant Public Defender, Dubuque, for minor child.
Considered by VOGEL, P.J., and EISENHAUER and POTTERFIELD, JJ.
VOGEL, P.J.
A father and mother separately appeal the district court's order terminating their parental rights to their son, C.S., born in November 2007. We affirm on both appeals.[1]

I. Background Facts and Proceedings.
C.S. was initially removed from his parent's care shortly after his birth, when cocaine was discovered in the baby's stool. C.S. was placed in family foster care. In February 2008 all parties stipulated that C.S. was a child in need of assistance (CINA), as defined in Iowa Code sections 232.2(6)(n) (2007) (parent's drug or alcohol abuse results in child not receiving adequate care); and (c) (illegal drug present in child). Various reunification services were ordered and offered to the parents.
After both parents demonstrated some progress towards sobriety and the ability to safely parent C.S., he was returned to their care. However, progress was short-lived and C.S. was again removed. Two more times, the parents demonstrated some progress with maintaining sobriety, and the court in turn ordered C.S. returned to their care. The final removal occurred in December 2008, after the parents again relapsed into cocaine use. Eventually the State petitioned for termination of both parents' rights to C.S. The termination hearing was held over the course of several days: March 19, 2009, April 17, 2009, and May 14, 2009. The district court found clear and convincing evidence supporting termination of both parents' rights pursuant to Iowa Code sections 232.116(1)(h) (2009) (child is three or younger, child CINA, removed from home for six of last twelve months, and child cannot be returned home) by order dated June 11, 2009. The parents separately appeal.

II. Scope and Standard of Review.
We review termination of parental rights de novo. In re Z.H., 740 N.W.2d 648, 650 (Iowa Ct.App.2007). Grounds for termination must be proved by clear and convincing evidence. In re J.E., 723 N.W.2d 793, 798 (Iowa 2006). Our primary concern is the best interests of the children. Id.

*299 III. Notice of Potential Termination.
The father and mother both raise issues relating to a mistaken date included in two district court interim orders.[2] The father claims because of this error, the court lacked jurisdiction; the mother claims she was denied adequate notice of the potential for termination.
While the district court acknowledged the error, we find these arguments by the parents are simply disingenuous. As the district court noted, multiple prior orders contained language with the correct time-frame, putting them on notice very early on of the need to comply with services, or risk losing their parental rights. By the time the termination petition came on for hearing, C.S. had been out of his parents' care for 292 days, with little sustainable progress by either parent.
Furthermore, Iowa Code section 232.95, which provides the framework for seeking temporary removal of a child from the parental home, does not require a time-frame be included in the language. "The [removal] order shall also include a statement informing the child's parent that the consequences of a permanent removal may include termination of the parent's right with respect to the child." Iowa Code § 232.95(2)(a)(3). We affirm the district court's denial of the parents' request to dismiss the termination petition or reset the hearing, finding their arguments lack both merit and prejudice to either parent.

IV. Father's Appeal.
The father asserts he was denied services while he was incarcerated from December 19, 2008, until February 18, 2009. This issue was not ruled on by the district court. An issue that is not raised at the trial court may not be raised for the first time on appeal. See In re K.C., 660 N.W.2d 29, 38 (Iowa 2003) ("Even issues implicating constitutional rights must be presented to and ruled upon by the district court in order to preserve error for appeal."). Nonetheless, we note the district court did find both parents had an "extensive history" with the Iowa Department of Human Services (DHS) dating back to 2003.[3] The father has had a host of services provided to him, yet still has been unable to maintain sobriety or improve the many areas of his life that present grave concerns for the safety and well-being of C.S. J.E., 723 N.W.2d at 801 (Cady, J., concurring specially) (stating children's safety and their need for a permanent home are the defining elements in a child's best interests). The brief period of suspension of services the father complains of is overshadowed by the years of services he has been provided, without any lasting success. We affirm the termination of the father's parental rights.

V. Mother's Appeal.
The mother also claims she was denied reasonable effort services by DHS, specifically faulting its failure to refer her to the appropriate residential chemical dependency treatment. The district court detailed the several substance abuse treatment plans DHS offered to the mother *300 starting in 2003 and continuing through the termination hearing, some the mother had been successful with and others the mother walked away from. As recent as December 2008, she was unsuccessfully discharged from yet another treatment center. While we acknowledge the intense grip illegal substances (in this case cocaine) can have on a person, and the corresponding need for an appropriate length of time to break the cycle of addiction, we also are mindful of the best interests of the children who are the unintended victims of their parents' dangerous lifestyle. The paramount consideration in parental termination proceedings is always the best interests of the child. In re C.K., 558 N.W.2d 170, 172 (Iowa 1997).
How long a child is forced to be out of the home waiting for a responsible parent to emerge is determined by our Iowa legislature. See generally Iowa Code § 232.116. With those time frames in mind, we have recognized that at some point, the rights and needs of the children rise above the rights and needs of the parent. In re J.L.W., 570 N.W.2d 778, 781 (Iowa Ct.App. 1997). The mother has had ample opportunity for many years to maintain sobriety but has failed to do so. "[I]n considering the impact of [a parent's] drug addiction, we must consider the treatment history of the parent to gauge the likelihood that the parent will be in a position to parent the child in the foreseeable future." In re N.F., 579 N.W.2d 338, 341 (Iowa Ct.App. 1998). The mother's claim that the district court abused its discretion in denying her motion for extension of time must be rejected for the same reason: her history shows an inability to maintain sobriety. The district court correctly found clear and convincing evidence to terminate the mother's parental rights.
AFFIRMED AS TO BOTH APPEALS.
NOTES
[1] The mother "formally objects to the requirement that she file this Petition on Appeal prior to the receipt of and opportunity to review the transcript of trial proceedings." She cites no authority to support her objection. We reject her claim. See In re R.K., 649 N.W.2d 18, 21-22 (Iowa Ct.App.2002) (holding no due process violation in the expedited appeal procedure as counsel had the opportunity to identify the issues for review and the reviewing court had the entire record and trial transcript to conduct its de novo review).
[2] The December 12, 2008 and the January 12, 2009 orders both contained this language: "The child's parents are hereby warned that the consequences of a permanent removal may include petition for termination of parental rights with respect to the child in 12 months from the date of removal; that their parental rights could be terminated and further that all reasonable effort services are provided herein and continue to be provided for reunification."
[3] The father and mother both had their parental rights terminated as to two other children; also the mother had her rights terminated to another child; the father voluntarily released his parental rights to yet another child.