**IN THE COURT OF APPEALS OF IOWA**

No. 15-0399
Filed May 6, 2015

**IN THE INTEREST OF A.A., N.A., AND D.S.,**
**Minor Children,**

**S.A., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Louise M. Jacobs,

District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Jesse A. Macro Jr. of Gaudineer & George, L.L.P., West Des Moines, for

appellant mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant

Attorney General, John P. Sarcone, County Attorney, and Annette Taylor,

Assistant County Attorney, for appellee State.

Brent Pattison of the Drake Legal Clinic, Des Moines, attorney and

guardian ad litem for minor children.

Considered by Danilson, C.J., and Vaitheswaran and Doyle, JJ.

**DOYLE, J.**

A mother, S.A., appeals from the termination of her parental rights to her three children N.A., born in 2004, A.A., born in 2007, and D.S., born in 2009. Reviewing her claims de novo, *see In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014), we affirm.

In determining whether parental rights should be terminated under chapter 232 (2013), the juvenile court "follows a three-step analysis." *See In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Step one requires the court to "determine if a ground for termination under section 232.116(1) has been established" by the State. *Id.* If the juvenile court finds grounds for termination, the court moves to the second step of the analysis: deciding if the grounds for termination should result in a termination of parental rights under the best-interest framework set out in section 232.116(2). *Id.* at 706-07. In making this determination, the primary consideration is the children's safety, their best placement for furthering their long-term nurturing and growth, and their physical, mental, and emotional conditions and needs. Iowa Code § 232.116(2). Even if the juvenile court finds "the statutory best-interest framework supports termination of parental rights," the court must proceed to the third and final step: considering "if any statutory exceptions set out in section 232.116(3) should serve to preclude termination of parental rights." *D.W.*, 791 N.W.2d at 707.

The mother does not challenge the statutory grounds found for supporting termination of her parental rights. Rather, she contends termination of her parental rights is not in the children's best interests, pointing out the juvenile court's termination-of-parental-rights ruling did not explicitly contain the phrase

"termination is in the children's best interests." She also asserts "she was making significant progress with her substance abuse and mental health treatment [at] the time of the termination trial," and the court should therefore have considered other permanency options, including an additional six months to work towards reunification. Upon our de novo review, we find termination of her parental rights without further delay is in the children's best interests.

As we have stated numerous times, children are not equipped with pause buttons, and the "crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). While the law requires a "full measure of patience with troubled parents who attempt to remedy a lack of parenting skills," this patience has been built into the statutory scheme of chapter 232. *In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000). Our supreme court has explained that "the legislature, in cases meeting the conditions of [the Iowa Code], has made a categorical determination that the needs of a child are promoted by termination of parental rights." *In re M.W.*, 458 N.W.2d 847, 850 (Iowa 1990) (discussing Iowa Code section 232.116(1)(e)). Consequently, "[t]ime is a critical element," and parents simply "cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting." *C.B.*, 611 N.W.2d at 495. At some point, as is the case here, the rights and needs of the children must rise above the rights and needs of the parent. *See In re C.S.*, 776 N.W.2d 297, 299 (Iowa Ct. App. 2009). The public policy of the state having been legislatively set, we are obligated to heed the statutory time periods for reunification.

Here, the mother has used methamphetamine off-and-on since she was fourteen-years old. She has never successfully completed a substance-abuse-treatment program. She also has a history of involvement with the Iowa Department of Human Services (Department), including a founded 2005 child abuse report against her for denial of critical care to her eldest child due to drug use. The mother and her children came to the attention of the Department again in September 2013 after it was reported she was using methamphetamine and had placed her children in other relatives' care, including the father of one of the children who was also using methamphetamine. The mother admitted she knew the child's father was using, but she believed the child would be better off in his care. Yet, she reported her own methamphetamine use had been four or five months prior thereto. The mother also acknowledged she had ongoing mental health needs that she was not addressing, including severe anxiety, depression, and borderline multiple personality disorder. The children were removed from the mother's care and have since remained in the care of others.

The children were found to have some educational delays at the time of removal, and they also exhibited behavioral issues, including acting out sexually. A child-in-need-of-assistance (CINA) petition was subsequently filed, and the children were adjudicated CINA in November 2013. Around this time, the mother began an in-patient substance-abuse-treatment program, and she admitted she was actually a daily IV methamphetamine user. She left the program after a week.

In December 2013, the mother was arrested for theft charges and was in jail for approximately five days. At that time, she admitted she had been shooting

up methamphetamine. The Department determined the mother had done this while her friend's six-year-old child was in her and her friend's care, leading to another founded child abuse assessment against the mother. The mother was arrested again in January 2014 for theft, trespass, and possession of drug paraphernalia.

Throughout the case, the mother made minimal progress at best, with sporadic participation in offered services and at times, the overall case. The reports from the children's guardian ad litem (GAL), the court appointed special advocate (CASA), and the Department's case worker throughout the pending CINA proceedings stressed time and again the importance of the mother following through with treatment and other services so she could finally put her children first in her life. She did not do much of anything during the CINA proceedings. Though the mother was generally consistent in her visits with the children, those visits she did miss caused her children pain, and the children often acted-out after any contact with the mother.

Only after the State filed a petition seeking termination of her parental rights in September 2014 did the mother attempt to face her substance abuse and mental health issues, among other things. At the hearing on the State's petition in December 2014, the mother testified she had been back in therapy and on mental-health-related medication "[p]robably a couple of weeks now." She testified she had "lately" consistently attended her children's therapy as she had been requested to do throughout the case. She testified she started a new job the day before the hearing.

The mother also testified she had been clean since November 2013, despite not being involved in or completing a substance-abuse-treatment program. However, her own statements in December 2013 establish she was intravenously using methamphetamine at that time, and her arrests in January 2014—including her arrest for possession of drug paraphernalia—indicate she was probably using then too. Either way, the mother's self-reports have not been reliable throughout the case, demonstrated by her reports of her last use of methamphetamine at the beginning of the case (that she had stopped using four or five months prior thereto, only to admit months later she was a daily IV methamphetamine user), and her report of last use in November 2013 at the 2014 termination hearing. She testified she understood that as a lifelong methamphetamine addict, she was always going to have issues with methamphetamine and other drugs, and to deal with her lifelong addiction, she planned "on getting back into outpatient treatment and beginning . . . NA classes." Yet, she admitted she had never successfully completed a treatment program, even knowing her parental rights were at risk due to her addiction for more than a year before the termination hearing. Her statements simply are not credible. She pointed out at the hearing that she provided a urinalysis drug screen in October 2014 that was negative for methamphetamine. Nevertheless, the next two samples the mother provided were too insufficient to test, calling into doubt her continued sobriety, particularly in light of her long history of methamphetamine use.

While it appears the mother loves her children, she did not demonstrate during the relevant statutory time period her ability to put their needs first to

provide them the stability and permanency they need. The fact that the mother's eldest child became quite upset after her stepmother pulled a plastic baggie containing baking soda from the cupboard to make biscuits, stating, "I thought you didn't do drugs!" gives a true glimpse into the issues these children have faced while in the mother's care. The children's GAL, the CASA, and the Department's case worker all recommend termination of the mother's parental rights, citing the children's need for permanency and stability. They are doing very well in their current placements, the eldest in her father's care and the two youngest together in a foster home with interest in adopting. Though we hope the mother is successful in her most recent attempt at sobriety, we are not tempted to play with these children's progress and newfound stability, given the mother's minimal participation until just before the termination-of-parental-rights hearing. Considering the children's safety, their best placement for furthering their long-term nurturing and growth, and their physical, mental, and emotional conditions and needs, we conclude termination of the mother's parental rights is in the children's best interests and a grant of an extension of time for the mother to work toward reunification is not warranted. Moreover, we find no statutory exceptions set out in section 232.116(3) serve to preclude termination of her parental rights. Accordingly, we affirm the juvenile court's order terminating the mother's parental rights.

**AFFIRMED.**