**IN THE COURT OF APPEALS OF IOWA**

No. 15-0394
Filed July 22, 2015

**IN THE INTEREST OF C.F.,**
**Minor Child,**

**S.F., Mother,**
**Appellant.**

_____

Appeal from the Iowa District Court for Floyd County, Karen Kaufman Salic, District Associate Judge.

A mother appeals the termination of her parental rights.  **AFFIRMED.**

David A. Kuehner of Eggert, Erb, Mulcahy & Kuehner, P.L.L.C., Charles City, for appellant mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, and Rachel A. Ginbey, County Attorney, for appellee State.

Cynthia Schuknecht of Noah, Smith & Schuknecht, P.L.C., Charles City, attorney and guardian ad litem for minor child.

Considered by Doyle, P.J., and Tabor and Mullins, JJ.

**DOYLE, P.J.**

S.F. is the biological mother of C.F. A year after the child's birth, the juvenile court terminated her parental rights to the child pursuant to Iowa Code section 232.116(1)(h) (2013). Under paragraph (h), parental rights may be terminated if the court finds by clear and convincing evidence that (1) the child is three years of age or younger, (2) has been adjudicated a child in need of assistance (CINA), (3) has been removed from the physical custody of his parents for at least six months of the last twelve months, and (4) there is clear and convincing evidence that the child cannot be returned to the custody of the child's parent at the present time. *See* Iowa Code § 232.116(1)(h). Here, there is no question the first three elements were established: the child was born in February 2014, was adjudicated a CINA in August 2014, and had been removed from the mother's physical custody since July 2014. However, the mother contends on appeal that the State failed to prove the child could not be returned to her care at the time of the termination-of-parental-rights hearing. Reviewing her claim de novo, *see In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014), we find the State has met its burden on this element.

After the child's birth, he was in the intensive care unit until June 2014. After being in his mother's care one month, the child was rushed to the emergency room where it was found the child had a bulging fontanelle and several retinal hemorrhages, which were believed to have been the result of physical trauma. There were also concerns that the child had gained very little weight while in the mother's care. The mother initially gave no plausible explanation for the child's head injuries, but she later admitted she had shook the

child after "her anger and frustration rose to a level that she was unable to control her rage." The child was ultimately placed in foster care.

The child was subsequently adjudicated a CINA, and reunification services were offered to the mother. However, she made little progress, and the State in December 2014 filed a petition seeking termination of her parental rights. Both the Department's case worker and the service provider testified at the termination-of-parental-rights hearing they recommended termination of the mother's parental rights. Both testified the child could not be safely returned to her care at that time, due to continuing concerns about the mother's parenting skills, her failure to address her mental health issues, her missed visitations, and her lack of stable housing. Additionally, the case worker testified the child and mother were not bonded, and not terminating the mother's parental rights at this point would be more detrimental to the child than continuing services. The child was in need of stability and was doing well in the care of his foster parents.

The mother insists that the child could be safely returned to her care at the time of the termination-of-parental-rights hearing because she was now living with relatives, stating she had been able "to care for her child from birth until the regrettable one time incident in June." Though there is no question that the mother loves the child, she admitted at the hearing she had not "done anything specifically different than what [she] did before or . . . learn[ed] new skills." As we have stated numerous times, children are not equipped with pause buttons, and the "crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). While the law requires a "full measure of patience with troubled

parents who attempt to remedy a lack of parenting skills," this patience has been built into the statutory scheme of chapter 232. *In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000). Our supreme court has explained that "the legislature, in cases meeting the conditions of [the Iowa Code], has made a categorical determination that the needs of a child are promoted by termination of parental rights." *In re M.W.*, 458 N.W.2d 847, 850 (Iowa 1990). Consequently, "[t]ime is a critical element," *C.B.*, 611 N.W.2d at 495, and at some point, as is the case here, the rights and needs of the children must rise above the rights and needs of the parent. *See In re C.S.*, 776 N.W.2d 297, 299 (Iowa Ct. App. 2009). The public policy of the state having been legislatively set, we are obligated to heed the statutory time periods for reunification. This child was injured while in the mother's care, and she had not addressed the concerns that have existed since the time of the child's adjudication by the time of the termination-of-parental-rights hearing. We agree with the juvenile court that the State established the child could not be returned to the mother's care at the termination-of-parental-rights hearing. Accordingly, we affirm the court's order terminating the mother's parental rights.

**AFFIRMED.**