# IN THE COURT OF APPEALS OF IOWA

No. 15-1214
Filed September 23, 2015

**IN THE INTEREST OF C.B. AND T.B.,**
**Minor Children,**

**J.B., Mother,**
**Appellant.**

_____

Appeal from the Iowa District Court for Polk County, Joseph W. Seidlin, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Cathleen J. Siebrecht of Siebrecht Law Firm, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, John P. Sarcone, County Attorney, and Andrea S. Vitzthum, Assistant County Attorney, for appellee State.

Paul White of the Polk County Juvenile Public Defender, Des Moines, attorney and guardian ad litem for minor children.

Considered by Doyle, P.J., and Tabor and Bower, JJ.

**DOYLE, Presiding Judge.**

A mother appeals from the termination of her parental rights to her children born in 2013 and 2014.[1]  Reviewing her claims de novo, *see In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014), we affirm.

I.      ***Background Facts and Proceedings***

The mother and the father were arrested for various criminal offenses after a traffic stop in April 2014.  Due to their incarceration, the parents stipulated to the removal of C.B.  C.B. was placed in foster care.  The father died shortly thereafter and the mother stipulated to the adjudication of C.B. as a child in need of assistance (CINA).  C.B. continued in foster care as the mother needed to address her mental health issues and did not have stable housing.

When T.B. was born in 2014, the mother was residing at Hope Ministries.  T.B. was allowed to stay there with her.  The mother was making progress and it was anticipated she would by reunified C.B.  However, the mother was arrested and jailed in October 2014 on an outstanding warrant.  T.B. was removed from her care and was adjudicated CINA.  The mother was released from jail in February 2015, and she reentered the Hope Ministries residential program.  In March 2015, the mother left and did not return, violating the terms of her probation.  She was taken back into custody in April 2015, her probation was revoked, and she was sentenced to seven years in prison.  The termination of parental rights hearing was held in May 2015.  The mother requested additional time to be reunified with her children.

---

[1] The father of both children died during these proceedings.

The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(e) (2015) (adjudicated CINA and removed from the parents' care for a period of at least six consecutive months, and parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so), and (h) (age three or younger, adjudicated CINA and removed from the parents' care for six of the last twelve months, and cannot be returned to the parents' custody at the time of the termination hearing). The mother appeals.

## II. Discussion

In determining whether parental rights should be terminated under Iowa Code chapter 232, the juvenile court "follows a three-step analysis." *See In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Step one requires the court to "determine if a ground for termination under section 232.116(1) has been established" by the State. *See id.* If the juvenile court finds grounds for termination, the court moves to the second step of the analysis: deciding if the grounds for termination should result in a termination of parental rights under the best-interest framework set out in section 232.116(2). *See id.* at 706-07. Even if the juvenile court finds "the statutory best-interest framework supports termination of parental rights," the court must proceed to the third and final step: considering "if any statutory exceptions set out in section 232.116(3) should serve to preclude termination of parental rights." *See id.* at 707. In terminating the mother's parental rights, the juvenile court appropriately employed this three-step process.

"On appeal, we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *See id.* After reviewing the record in this case de novo, we conclude grounds for termination exist under section 232.116(1)(h). As mentioned above, under that subsection, termination may be ordered when there is clear and convincing evidence a child age three or younger, who has been adjudicated in need of assistance and removed from the parent's care for the last consecutive six months, cannot be returned to the parent's custody at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h). The mother makes no argument that the first three prongs were not proven. In any event, there can be no real dispute the first three prongs of section 232.116(1)(h) have been met—at the time of termination, C.B. and T.B. were both under three years of age, adjudicated CINA, and had been out of the mother's custody for the last six consecutive months. *See id.* § 232.116(1)(h)(1)-(3). The mother's claim implicates the fourth element, *see id.* § 232.116(1)(h)(4) ("There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents . . . at the present time."). The mother disagrees with the juvenile court's conclusion that to return the children to her "in the foreseeable future may also be impossible due to her incarceration, but in any event would subject them to great instability and uncertainty inflicted by their mother."

It is clear the children could not have been returned to the mother's custody at the time of the termination-of-parental-rights hearing—the mother was incarcerated. The mother has been sentenced to seven years' incarceration. Although conviction of a crime and the resulting imprisonment do not necessarily

result in termination of parental rights, incarceration, by the same token, cannot justify a parent's lack of relationship with the child. *See In re M.M.S.*, 502 N.W.2d 4, 8 (Iowa 1993). Furthermore, when asked at the hearing, "But you can acknowledge today that you are not in a place to have your children placed with you, is that correct?" the mother responded "Yes." We therefore agree with the juvenile court that the evidence presented at the termination hearing demonstrated the children could not be returned to her care at that time. Upon our de novo review, we find termination of the mother's parental rights was proper under section 232.116(1)(h). Accordingly, we affirm on this issue.

At the time of the termination hearing, two-year-old C.B. had been out of the mother's care for over a year, and eight-month-old T.B. had been out of her care for seven months. Insofar as the mother suggests she needs additional time before the children could be returned to her, "[w]e have repeatedly followed the principle that the statutory time line must be followed and children should not be forced to wait for their parent to grow up." *See In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998); *see also* Iowa Code § 232.116(2). The evidence here clearly and convincingly establishes the mother will not be able to participate in the children's lives for a significant period of time due to her incarceration.

As we have stated numerous times, children are not equipped with pause buttons. "The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). While the law requires a "full measure of patience with troubled parents who attempt to remedy a lack of parenting skills," this patience has been built into the statutory scheme of chapter 232. *See In re C.B.*, 611

N.W.2d 489, 494 (Iowa 2000). Our supreme court has explained that "the legislature, in cases meeting the conditions of [the Iowa Code], has made a categorical determination that the needs of a child are promoted by termination of parental rights." *In re M.W.*, 458 N.W.2d 847, 850 (Iowa 1990) (discussing then Iowa Code section 232.116(1)(e)). Consequently, "[t]ime is a critical element," and parents simply "cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting." *See C.B.*, 611 N.W.2d at 495.

At some point, as is the case here, the rights and needs of the children must rise above the rights and needs of the parent. *See In re C.S.*, 776 N.W.2d 297, 299 (Iowa Ct. App. 2009). The public policy of the state having been legislatively set, we are obligated to heed the statutory time periods for reunification. The statutory time frames for reunification have passed. These children are in need of permanency, and they should not have to wait any longer in limbo during the mother's incarceration. We conclude a grant of additional time for the mother toward reunification is not justified here.

Additionally, we note that both children are now residing in the same pre-adoptive foster home. The juvenile court found, "[B]oth children are integrated into the foster family. It is a caring and nurturing environment. The foster family provides for both children's physical, emotional and mental needs. The foster family is able to provide for the children's long term nurturing and growth."

For all the above reasons, we affirm the order terminating the mother's parental rights.

**AFFIRMED.**