# IN THE COURT OF APPEALS OF IOWA

No. 15-1936
Filed March 23, 2016

**IN THE INTEREST OF J.F., A.F., A.F., A.F., and S.F.,**
**Minor Children,**

**K.W., Father,**
       Appellant,

**K.W., Mother,**
       Appellant.
_____

Appeal from the Iowa District Court for Scott County, Christine Dalton, District Associate Judge.

A father and mother appeal separately from the juvenile court's order terminating their parental rights. **AFFIRMED ON BOTH APPEALS.**

Barbara E. Maness of Kimball-Stevenson House, Davenport, for appellant father.

Christine D.Z. Frederick of Zamora, Taylor, Woods, & Frederick, Davenport, for appellant mother.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant Attorney General, for appellee State.

Patricia A. Rolfstad, Davenport, attorney and guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

A father and mother appeal separately from the juvenile court's order terminating their parental rights. Both parents argue the State failed to prove (1) the children could not be returned safely to their care, (2) reasonable efforts toward reunification had been made, and (3) termination was in the children's best interests. The parents also assert they share a bond with their children that weighs against termination of their parental rights. We affirm on both appeals.

## I.    Background Facts and Proceedings

The mother has five children involved in this case: S.F., born in October 2007;[1] A.F., born in July 2009; A.F., born in May 2011; J.F., born in April 2012; and A.F., born in December 2013. The father involved in this case is the biological father of the four youngest children at issue here.[2]

The family has a long history of involvement with the Iowa Department of Human Services (DHS). In the spring of 2010, DHS provided the family with in-home voluntary services to address unsafe and unsanitary conditions in the home, including lead paint poisoning. DHS continued to be involved with the family periodically on a voluntary basis until July 2011, when DHS received reports that the father had sexually molested his three-month-old child and another young family member. In August 2013, the children again came to DHS's attention due to even worse unsafe and unsanitary conditions in the home. A month later, DHS removed the children from the parents' home due to

---

[1] Notice of the termination hearing was not provided to the biological father of S.F. prior to the September 2015 hearing, and a separate hearing regarding his parental rights was to be held at a later date.

[2] The parents have another child together, born in 2015, who is not involved in the present case.

the unsanitary conditions, as well as the children's physical and cognitive developmental deficiencies resulting from inattentive and neglectful parenting practices.[3]  The children were placed in family foster care and remained there throughout the termination proceedings.

In December 2013, the four oldest children were adjudicated children in need of assistance (CINA).  At the time, the parents were exercising extended and overnight visits with their children in the home.  Later that month, the parents' youngest child involved in this case was born.  The youngest child stayed in the parents' care and custody until May 2014, when DHS removed her due to allegations that the father had sexually molested the mother's oldest child.[4]  The court subsequently adjudicated the youngest child CINA.

Throughout the case, DHS expressed concerns regarding both parents' mental health.  Pursuant to the case plan, both parents completed evaluations and were required to attend individual therapy.  The parents reported they were each attending individual therapy and participating in couples counseling; however, they refused to sign releases to allow DHS to verify their attendance.

DHS also expressed concerns about the parents' abilities to recognize that each child is at a different developmental stage and each child has different needs.  Further, the parents did not understand how their own actions impacted

---

[3] The mother was unemployed and the father worked a paper route up to four hours a day, yet neither cared for the condition of the home.  There were dog feces, diapers, and garbage throughout the home.  The children and their toys were coated in dog feces and other filth.  The children did not have sanitary bedding.  The parents were sleeping during the day—gating the children in their bedrooms from where the children threw dog feces and toys onto the roof outside their second-story windows.  In order to clean the house, the carpets had to be removed and many of the children's toys and books had to be replaced.

[4] The juvenile court did not find sufficient evidence as to the sexual abuse of the oldest child.

their children. The father was disrespectful toward the mother and belittled her in the presence of the children, while the mother's suspicion of providers and the father created a barrier to reunification with her children.

Additionally, the father struggled with substance abuse throughout the case. He completed two substance abuse evaluations, each recommending extended outpatient treatment for his alcohol abuse. In May 2015, he tested positive for methamphetamine. As recently as July 2015, the father admitted he was crushing and snorting his antidepressant and sleep prescription medication and did not believe he was abusing the medication even though he was taking approximately three times the prescribed amount.

In February 2015, the juvenile court entered an order granting the parents additional time to work toward reunification with their children. The court acknowledged the parents had worked hard to clean the home since the children's removal, yet still struggled to keep the home clean and safe for the children. The court commended the mother for her progress in services and her appropriate interactions with the children. However, the court expressed concerns regarding the mother's inability to incorporate routines with the children, her lack of focus on reading and education, and her inadequate supervision skills. The court also expressed safety concerns about whether the mother could parent all five children at the same time and meet their individual developmental needs. Regarding the father, the court found he "continue[d] to have many parenting deficits," despite his participation in parenting classes. It also found he still struggled to interact with the children, even during short visits, and put his own needs ahead of parenting the children.

In June, the court entered a modification and permanency review order finding the parents had made limited progress in recent months and additional time would not result in reunification for the family. It noted DHS had made reasonable efforts to reunify the family and the parents had participated in services for over five years but still could not meet the needs of their children. The court also found the children had shown great strides in their development since removal from the parents' home. The court found any further delay in permanency would not be in the children's best interests and directed the State to file petitions for termination of parental rights.

In August, the Foster Care Review Board submitted a report stating it supported termination of the parents' parental rights. DHS also recommended termination. Additionally, therapists for two of the children both recommended termination and placement in a foster-to-adopt home. The children's guardian ad litem (GAL) did not make a recommendation.

In September, the juvenile court held a termination hearing. Thereafter, the juvenile court terminated the mother's parental rights to all five children and the father's parental rights to his four biological children pursuant to Iowa Code section 232.116(1)(d), (f), (h), and (i) (2015). In its order, the court noted both parents had attended multiple parenting classes and had engaged in weekly parent education sessions for over two years. It recognized the mother had made significant progress and improved her parenting skills to where she was engaging the children and planning fun and educational activities. However, the court found the mother could not multi-task and take care of all five children at the same time. It also found the father still struggled to engage his children even

during short visits and continued to prioritize his needs above those of the children. The court also noted that despite the fact that neither parent had a job, the parents struggled to keep the house clean. The court relied on the parents' completed parenting profiles that showed they were in a medium-to-high-risk category, and concluded the children were still at risk of adjudicatory harm and could not be returned to either parent at that time. The mother and father separately appeal.

## II.    Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We give weight to the factual determinations of the juvenile court, especially with regard to witness credibility, but we are not bound by them. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). Our primary consideration is the best interests of the children. *Id.* at 776.

## III.    Analysis

### A.  Statutory Grounds

The juvenile court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(d) and (i) as to all five of the children in the present case, paragraph (f) as to the three oldest children, and paragraph (h) as to the two youngest children involved here. On appeal, the mother makes a general argument that the juvenile court should not have terminated her parental rights to her five children and the children should be returned to her care and custody because she has completed the goals of the DHS case plan.

The juvenile court terminated the father's parental rights pursuant to section 232.116(1)(d) and (i) as to all four of his children involved here,

paragraph (f) as to his two oldest children, and paragraph (h) as to his two youngest children involved in the present case. On appeal, the father only makes a general argument against the grounds for termination and does not challenge a specific subsection.

We will uphold an order terminating parental rights when there is clear and convincing evidence of the statutory grounds for termination. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence. *Id.* When a court terminates parental rights on more than one ground, we may affirm on any of the grounds. *Id.* at 707.

Iowa Code section 232.116(1)(f) provides the court may terminate a parent's parental rights if the State proves by clear and convincing evidence the child (1) is four years of age or older; (2) has been adjudicated CINA; (3) has been removed from the physical custody of the parent for at least twelve of the last eighteen months, or the last twelve consecutive months and any trial period at home has been less than thirty days; and (4) cannot be returned to the parent's custody at the time of the termination hearing. Under section 232.116(1)(h), the court may terminate parental rights if the court finds the State has proved by clear and convincing evidence the child (1) is three years old or younger; (2) has been adjudicated CINA; (3) has been removed from the physical custody of the parent for at least six of the last twelve months, or the last six consecutive months and any trial period at home has been less than thirty days; and (4) cannot be returned to the custody of the parent at the time of the termination hearing.

The oldest three children were all over the age of four years old at the time of the termination hearing, and the youngest two children involved in this case were age three or younger. The four oldest children were removed from their parents' care in September 2013 and subsequently adjudicated CINA. The youngest child involved here was removed from her parents' care in May 2014 and subsequently adjudicated CINA. All five of the children had remained out of their parents' care and custody for at least fifteen months at the time of the termination hearing in September 2015, without any trial periods at home.

Although we recognize the parents made progress, particularly the mother, neither parent was able to care for their children safely at the time of the termination hearing. The family started receiving voluntary, in-home services from DHS in 2010. The four oldest children were removed in 2013 due to the unsafe and unsanitary conditions of the home and the children's developmental deficiencies caused by the parents' neglect of the children and their needs. At the time of trial, both parents were still struggling to keep the house clean and sanitary, even though neither parent had a job. The parents made the decision to get a new puppy shortly before the termination hearing and encouraged the children to lie to the service providers about it. The mother has a learning disability that affects her ability to care for her children and assess their needs. She also has a strong distrust of her husband and others, which puts her children at risk of danger. In July 2015, the mother incorrectly interpreted the instructions for the proper dosage of medicine for one of the children, believing the correct dosage was six times the actual amount recommended. She refused to believe the father when he attempted to intervene. The father belittles the mother in front

of the children and prioritizes his own needs ahead of theirs. He continues to struggle with substance abuse and fails to recognize he was abusing his prescription medication.

DHS, the Foster Care Review Board, and two of the children's therapists all supported termination of the parents' parental rights. The juvenile court had already granted the parents' additional time and found the children could not be returned safely at the time of the termination hearing because the children were still at risk of adjudicatory harm despite all of the years of services provided to the parents and the number of parenting courses in which they had participated. On our de novo review, we find clear and convincing evidence to support the statutory grounds for termination of the mother and father's parental rights and affirm.

*B. Reasonable Efforts*

The father argues the State failed to prove by clear and convincing evidence that reasonable efforts toward reunification have been made.[5] He contends DHS failed to increase his visitation with the children despite his progress and participation in services. The mother also appears to argue that despite her progress with the case plan, DHS failed to extend her visits with the children or grant her unsupervised visits.

The State must make reasonable efforts to reunify the family as quickly as possible after children have been removed from their parents' care and custody.

---

[5] The State argues the father failed to preserve error on his reasonable-efforts challenge because he did not raise the issue of increased visitation to the court prior to the termination hearing. The record reveals that the father raised the issue to the juvenile court in a motion filed in May 2015. Therefore, we will consider his reasonable-efforts claim on the merits.

Iowa Code § 232.102(7). The reasonable-efforts requirement is not, however, viewed as a strict substantive requirement at termination. *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). Instead, it impacts the State's burden of proving those elements of termination that require reasonable efforts. *Id.* In determining whether reasonable efforts have been made, the court considers "[t]he type, duration, and intensity of services or support offered or provided to the child[ren] and the child[ren]'s family." Iowa Code § 232.102(10)(a)(1). "[T]he nature and extent of visitation is always controlled by the best interests of the child[ren]." *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996).

As noted above, the parents started receiving voluntary, in-home services in 2010. Despite these services, the children were removed in September 2013. Since their removal, the parents have received additional in-home services; visitation with their children—including extended and overnight visits; parenting classes; mental health services; substance abuse services; and employment resources for the father. The DHS worker testified the parents regularly ended visits early and the father cancelled at least two visits when the mother was unable to attend the visits so that he could participate in other activities. On our de novo review, we agree with the juvenile court that reasonable efforts toward reunification have been made in this case.

*C. Best Interests*

Both parents assert termination is not in the children's best interests. Even if a statutory ground for termination is met, a decision to terminate must still be in the children's best interests. *In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010).

We have thoroughly reviewed the record before us "giv[ing] primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2). Prior to the children's removal from the parents' home, the children suffered from both cognitive and physical developmental deficiencies as a result of the parents' neglect and inattention. The parents gated the children in their bedrooms during the day while the parents slept. The parents' home also lacked age-appropriate toys, books, and activities for the children. Since removal, the parents have continued to struggle with parenting the children and providing for their needs. "Insight for the determination of the child[ren]'s long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" *In re C.B.*, 611 N.W.2d at 495 (quoting *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981)). The juvenile court found the children had been thriving in their foster care homes and making great strides in their development. It noted, "[t]he children have caught up educationally and [one child]'s [negative] behaviors have all but disappeared." For these reasons, we agree with the juvenile court that termination is in the children's best interests.

*D. Exceptions*

Both parents also assert they share a bond with their children, and therefore, the juvenile court should not have terminated their parental rights.

Iowa Code section 232.116(3)(c) provides that "[t]he court need not terminate the relationship between the parent and child . . . [when] [t]here is clear

and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."  This factor is permissive, not mandatory, and the court may use its discretion, "based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship."  *In re D.S.*, 806 N.W.2d 458, 474–75 (Iowa Ct. App. 2011).

We do not find that the bond between the parents and their children weighs against termination of the parents' parental rights here.  Termination and adoption will provide these young children with the permanency and stability they deserve.  We cannot ask these children to continuously wait for their parents to become stable.  *See In re D.W.*, 791 N.W.2d at 707; *see also In re A.B.*, 815 N.W.2d at 777 ("It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." (quoting *In re P.L.*, 778 N.W.2d at 41)).  "[A]t some point, the rights and needs of the children rise above the rights and needs of the parent."  *In re C.S.*, 776 N.W.2d 297, 300 (Iowa Ct. App. 2009).

Thus, upon our de novo review, we affirm the juvenile court's order terminating the mother and father's parental rights to their children.

**AFFIRMED ON BOTH APPEALS.**