# IN THE COURT OF APPEALS OF IOWA

No. 18-0937
Filed September 12, 2018

**IN THE INTEREST OF A.H. and I.H.,**
**Minor Children,**

**R.H., Father,**
 Appellant.

_____

Appeal from the Iowa District Court for Pottawattamie County, Craig M. Dreismeier, District Associate Judge.

A father appeals the termination of his parental rights to his minor children. **AFFIRMED.**

Jon J. Narmi, Council Bluffs, for appellant father.

Thomas J. Miller, Attorney General, and John B. McCormally, Assistant Attorney General, for appellee State.

Roberta J. Megel of State Public Defender Office, Council Bluffs, guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

The children in interest were born in 2008 and 2010. The family was previously involved with child protective services in another state during which the children were removed from the parents' care for roughly three and a half years. The mother's parental rights were ultimately terminated, and the case was closed with the father having custody of the children and the mother being entitled to visitation at the father's discretion. The mother eventually moved back into the family home with the father and children.

The family came to the attention of the Iowa Department of Human Services (DHS) in October 2016 upon information that the father was both using methamphetamine in and selling the substance from the family home. The father and mother submitted to urine drug screens and tested negative for drugs, but the test results indicated the drugs tests were manipulated. As a result, DHS requested the parents to submit to hair testing. The parents declined, advising DHS they would only submit to another urine test. The parents subsequently agreed to take the hair tests. The parents failed to timely appear for their first scheduled hair tests. When the parents ultimately appeared for later tests, the mother tested positive for methamphetamine and amphetamines and the father did not have a sufficient amount of hair on his head or body for the test to be completed. As a result, DHS advised the parents the children would need to be subjected to hair testing. The parents declined the request. The children were removed from the parents' care in October and adjudicated children in need of assistance in December.

Later in December, the father was referred to submit to a urinalysis and sweat-patch test. The father tested negative for drugs on his urinalysis but reporting from staff at the testing facility indicated the father manipulated the test. The father subsequently reported to DHS that his sweat patch had become damaged shortly after its application. He was directed to return the patch to the testing center and obtain a new one. The father never returned the allegedly damaged patch or obtained a new one.

Following a substance-abuse evaluation in December, the father enrolled in outpatient treatment services. In March 2017, the father tested positive for methamphetamine. In June, the father engaged inpatient services. He was discharged in July having substantially completed the program. Shortly thereafter, the father enrolled in intensive outpatient treatment. He also submitted to drug screens in late July and early August and tested negative for drugs. As a result of these positive steps, DHS elevated the father's visitation with the children from fully supervised to semi-supervised.

At a group-therapy session in early September, however, the father fell asleep and was unresponsive to attempts to awaken him. Medical staff reported the father exhibited signs of being under the influence of an intoxicating substance. Later in September, the father was charged with domestic abuse assault.[1] The father's interactions with the children were returned to fully supervised, and DHS subsequently recommended that a concurrent permanency plan of termination of

---

[1] This charge was subsequently dismissed as a result of the alleged victim's unwillingness to cooperate with the prosecution of the crime.

parental rights be put in place as a potential alternative to reunification. The court adopted the recommendation in its subsequent permanency order.

The father was successfully discharged from inpatient treatment in November, despite violating the program's attendance policy. The treatment program reported there was nothing to indicate the father was using illegal drugs at the time of his discharge. In December, the father was arrested on a charge of fifth-degree theft.[2] Later in December, the father admitted to relapsing on methamphetamine. Thereafter, the father declined to reengage substance-abuse treatment and submit to drug testing. As a result, in March 2018, the State petitioned to terminate the father's parental rights. In April, the father was living with his paramour and her relatives, but he was asked to leave this residence because the relatives suspected he was using drugs.

It is undisputed that the father consistently attended visitations with the children throughout the life of the case and generally acted appropriately during those interactions, with some exceptions. However, the frequency and duration of the visits began to wane in or about December 2017. It is also generally undisputed that the father has continued to use drugs, was largely unemployed throughout the life of the case, and has been unable to maintain consistent suitable housing. The father did not attend the termination hearing, and the DHS worker reported his living arrangements were unknown.

The juvenile court ultimately terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(e), (f), and (*l*) (2018).

---

[2] The record indicates the father was convicted of this crime.

The father appeals. He contends: (1) the State failed to prove the statutory grounds for termination by clear and convincing evidence, (2) termination is not in the best interests of the children, and (3) the statutory exception contained in Iowa Code section 232.116(3)(c) should be applied to preclude termination. Our review is de novo. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).

As to the statutory grounds for termination, "we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). Under paragraph (f), the father appears to only challenge the State's establishment of the final element, that the children could not be returned to his care at the time of the termination hearing. *See* Iowa Code § 232.116(1)(f)(4); *D.W.*, 791 N.W.2d at 707 (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing"). The father simply argues there is clear and convincing evidence that the children "can be returned to [his] care today."

The uncontested evidence presented showed that at the time of the termination hearing in May 2018, the father had recently relapsed on methamphetamine and then evaded treatment and drug tests for several months thereafter, he was kicked out of the home he was residing in even more recently because he was allegedly using illegal drugs, and he had a current and historical inability to maintain consistent and suitable employment and housing. The father's progression beyond fully supervised visitation to semi-supervised visitation was short-lived—only remaining in effect for one visitation—as a result of the father's conduct. We find the evidence clear and convincing that the children could not be

returned to the father's care at the time of the termination hearing. We affirm the juvenile court's finding of the same.

Next, the father contends termination is not in the children's best interests. In determining whether termination is in the best interests of a child, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). We fully acknowledge that the father shares a bond with these children and that he has the potential to be a caring and appropriate father, as has been demonstrated during his visitations with the children. However, although the father has been able to maintain short stints of supposed sobriety, the record makes clear he is unable to refrain from the use of illegal substances on a long-lasting basis. The father is unable to maintain employment and suitable housing. The father's inability to obtain and sustain sobriety, employment, or suitable housing has a direct and negative impact on his ability to provide for these children's safety; long-term growth; and physical, mental, and emotional well-being. There is no change in sight. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re A.B.*, 815 N.W.2d 764, 777 (Iowa 2012) (quoting *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010)). "[A]t some point, the rights and needs of the children rise above the rights and needs of the parent." *In re C.S.*, 776 N.W.2d 297, 300 (Iowa Ct. App. 2009). These children have waited for permanency long enough. Termination is in their best interests.

Finally, the father argues the statutory exception contained in Iowa Code section 232.116(3)(c) should be applied to preclude termination. "The court need not terminate the relationship between the parent and child if . . . there is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). The application of the statutory exceptions to termination is "permissive not mandatory." *In re M.W.* 876 N.W.2d 212, 225 (Iowa 2016) (quoting *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014)). "[T]he parent resisting termination bears the burden to establish an exception to termination." *A.S.*, 906 N.W.2d at 476.

The father presented no testimony or evidence at the termination hearing that termination would be detrimental to these children due to the parent-child bond. The State's evidence does indicate the children share somewhat of a bond with the father. Generally lacking in the record, however, is clear and convincing evidence that at the time of the termination hearing "termination would be detrimental to the child[ren] . . . due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). We conclude the father failed to meet his burden to establish the statutory exception to termination. *See A.S.*, 906 N.W.2d at 476. In the alternative, we conclude the application of the permissive exception to termination would be contrary to the children's best interests.

Upon our de novo review, we affirm the termination of the father's parental rights.

**AFFIRMED.**