**IN THE COURT OF APPEALS OF IOWA**

No. 24-0704
Filed July 24, 2024

**IN THE INTEREST OF R.D.,**
**Minor Child,**

**M.D., Father,**
       Appellant,

**D.L., Mother,**
       Appellant.

_____

Appeal from the Iowa District Court for Polk County, Brent Pattison, Judge.


A mother and father separately appeal the termination of their parental rights to a child.  **AFFIRMED ON BOTH APPEALS.**


Adam E. Brewster of Neighborhood Law Group of Iowa, West Des Moines, for appellant father.

Felicia M. Bertín Rocha of Bertín Rocha Law, P.C., Urbandale, for appellant mother.

Brenna Bird, Attorney General, and Lisa Jeanes, Assistant Attorney General, for appellee State.

Megil Dashawn Patterson of Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.


Considered by Ahlers, P.J., and Chicchelly and Buller, JJ.

**CHICCHELLY, Judge.**

A mother and father separately appeal the order terminating their parental rights. The mother challenges each step of the termination analysis, *In re A.S.*, 906 N.W.2d 467, 472–73 (Iowa 2018) (describing the three-step analysis), and asks for more time. The father contends that termination is not in the child's best interests and seeks to avoid termination by having the child placed in the custody of a relative. Following a de novo review, *see In re A.B.*, 956 N.W.2d 162, 168 (Iowa 2021), we affirm the order terminating each of their parental rights.

**I. Background Facts and Proceedings.**

The child came to the attention of the Iowa Department of Health and Human Services (HHS) in July 2023 after the mother tested positive for heroin, amphetamines, and methadone when she was admitted to the hospital to give birth. The child's umbilical cord tested positive for methadone, and the child showed signs of withdrawal. As a result, the juvenile court removed the child from the parents' custody when the child was two weeks old. HHS placed the child in foster care, and the child remains in the same placement.

The State petitioned to adjudicate the child as a child in need of assistance (CINA). The parents stipulated that the child was CINA, and the juvenile court entered the adjudicatory order in September. The father's paternity was confirmed by paternity testing completed the same month.

The mother has a history of substance use that extends over twenty years. Her substance-use issues resulted in the termination of her parental rights to two other children: one in 2009 and the other in 2014. The mother admits she has struggled with methamphetamine and heroin for several years. She entered

inpatient treatment in September, but she was discharged eight days later for violating the program's policies. The mother showed signs of being under the influence during a supervised visit with the child, and she was arrested on drug charges in November. She never provided samples for drug testing when asked and never completed treatment.

The father also has a long history of substance use. He admits he uses alcohol and marijuana regularly and uses cocaine "socially." The father was enrolled in inpatient treatment for about five weeks, but he was discharged in November for using methamphetamine and attempting to fake the results of a drug screening. In January 2024, he was arrested on drug charges after he was located inside a vehicle driven by the mother.

The State petitioned to terminate the mother's and father's parental rights. The termination hearing was held in March.[1] At the time of the termination hearing, the father was incarcerated after pleading guilty to possession of fentanyl with intent to deliver and possession of contraband in a correctional facility, for which he received consecutive sentences totaling fifteen years in prison. The mother was also incarcerated at the time of the hearing after pleading guilty to possession of methamphetamine, second offense, and receiving a suspended sentence. The mother's attorney moved to continue the hearing until the mother's release from jail, but the juvenile court denied the motion based on the late request and the importance of addressing permanency for the child.

---

[1] When neither parent appeared at a February permanency hearing, it was reset to coincide with the termination hearing the next month.

At the termination hearing, the HHS worker testified that the child was doing well in his foster-home placement. HHS was also investigating the possibility of placing the child with the paternal grandmother, who lives outside of Iowa. The mother asked for a three-month extension of permanency to attend inpatient treatment. In the alternative, she asked the court to place the child with the paternal grandmother. The father admitted he could not take custody of the child due to his incarceration, but he argued the mother could be successful if she was given more time.

The juvenile court found the State proved the grounds for terminating the mother's parental rights under Iowa Code section 232.116(1)(g) and (h) (2024) and the father's parental rights under section 232.116(1)(h). It also found that termination is in the child's best interests and none of the circumstances set out in section 232.116(3) apply. It terminated the mother's and father's parental rights and placed the child in the custody of HHS for pre-adoptive care.

**II. Mother's Appeal.**

We start our analysis with the termination of the mother's parental rights. The mother challenges the evidence showing the grounds for termination and asks for more time. She also contends termination is not in the child's best interests and seeks to avoid termination based on one of the grounds set out in Iowa Code section 232.116(3).

We begin with the grounds for termination. *See A.S.*, 906 N.W.2d at 472–73. Because the juvenile court terminated the mother's parental rights on two statutory grounds, "we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We focus

our analysis on Iowa Code section 232.116(1)(h). The mother does not dispute that the State proved the first three requirements for termination under this section. *See* Iowa Code § 232.116(1)(h)(1)-(3) (applying if a child is three or younger, has been adjudicated CINA, and has been removed from the parent's custody for six months). She challenges the fourth element, which requires clear and convincing evidence showing the child cannot be returned to the parent's custody at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4); *A.B.*, 956 N.W.2d at 168.

The child cannot be returned to the mother's custody because at the time of the termination hearing, the mother was in jail. The mother argues that she was about to be released from jail, so "the child could have been returned to her care within a few days after the termination hearing." But even if the mother were not in jail, the child could not be returned to her custody because the substance-use issues that led to the CINA adjudication remain unresolved. *See In re W.M.*, 957 N.W.2d 305, 313 (Iowa 2021) ("A long history of substance abuse, repeated relapses, and demonstrated inability to maintain sobriety outside a supervised setting demonstrates the child[] could not have been returned to [the mother's] care at the time of the termination hearing."). Clear and convincing evidence supports terminating the mother's parental rights under section 232.116(1)(h).

As an alternative to termination, the mother asks us to delay permanency for six months. *See* Iowa Code § 232.104(2)(b) (allowing the court to continue a child's placement for up to six months if the need for the child's removal from the home will no longer exist at the end of that period). But to delay permanency, we must "enumerate the specific factors, conditions, or expected behavioral changes

which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Considering the mother's substance-use history, failed past attempts at sobriety, and lack of engagement in services during these proceedings, we cannot find the need for removal would be eliminated if the mother was given more time.

We next consider "whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights." *See A.S.*, 906 N.W.2d at 473 (citation omitted). When determining best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2); *accord In re L.T.*, 924 N.W.2d 521, 528 (Iowa 2019) (stating that "we look to the child's long-range as well as immediate interests, consider what the future holds for the child if returned to the parents, and weigh the child's safety and need for a permanent home" (cleaned up)).

Clear and convincing evidence shows that termination is in the child's best interests. The child was removed from the mother two weeks after birth and was never returned to her custody. The mother's substance-use issues impede the mother from providing the child with the care he requires. Her past performance casts doubt on her ability to provide that care. *See In re B.H.A.*, 938 N.W.2d 227, 233 (Iowa 2020) (noting that the mother's past performance indicates the quality of care she can provide in the future). While the mother squandered the precious time afforded during the CINA proceedings, his pre-adoptive foster placement

provided the long-term safety and stability that the child needs. The child is bonded with his foster parent and is thriving in her care. Although terminating parental rights may hurt the mother, the child's needs supersede hers. *See In re C.S.*, 776 N.W.2d 297, 300 (Iowa Ct. App. 2009) ("[A]t some point, the rights and needs of the child[] rise above the rights and needs of the parent.").

Finally, "we consider whether any exceptions in section 232.116(3) apply to preclude termination of parental rights." *See A.S.*, 906 N.W.2d at 473. The mother argues against terminating her parental rights under section 232.116(3)(c) (stating that the court "need not terminate the relationship between the parent and child if . . . [t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship"). In support of her argument, she notes that she nursed the child "from the time of his birth through his removal." But that two-week period pales in comparison to the eight months that passed from the child's removal to the termination hearing. Further, as the juvenile court noted, any bond established between the mother and child has been harmed by the mother's absence due to her substance use and incarceration. The mere existence of a parent-child bond is insufficient. To avoid termination under section 232.116(3)(c), the mother bears the burden of showing by clear and convincing evidence "that, on balance, [the parent-child] bond makes termination more detrimental [for the child] than not." *W.M.*, 957 N.W.2d at 315. The mother has not shown that the strength of their bond outweighs the child's need for permanency such that termination of her parental rights will harm the child.

Having found clear and convincing evidence supporting termination under Iowa Code section 232.116(1)(h), termination is in the child's best interests, and the circumstances listed in section 232.116(3) do not apply to the mother, we affirm the termination of her parental rights. We turn then to the father's appeal.[2]

**III. Father's Appeal.**

The father contends the juvenile court erred by terminating his parental rights because "reasonable efforts were not followed to pursue familial placement as required under Iowa Code [section] 232.117(3)."[3] The father requested that HHS consider the paternal grandmother as a potential placement for the child. In a report filed one week before the termination hearing, HHS stated that it had started obtaining a home study of the paternal grandmother's home but no findings were available yet.

When the court transfers custody of the child to HHS for placement after a dispositional hearing, Iowa Code section 232.102(6) requires HHS to "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child." But this requirement "is not viewed as a strict substantive requirement of termination." *L.T.*, 924 N.W.2d at 527

---

[2] In her appellate brief, the mother states that if we affirm the termination of her parental rights, she joins the father's arguments about the child's placement. We address those claims below.

[3] The father appears to conflate the statute addressing transfer of legal custody and placement of a child following a dispositional hearing with the statute addressing a child's custody and placement following termination. *Compare* Iowa Code § 232.102 (addressing the transfer of legal custody and placement of a child after a dispositional hearing), *with id.* § 232.117(3) (addressing the transfer of guardianship and custody of a child following termination of parental rights). Although section 232.102 requires reasonable effort to return the child to the parent's custody, section 232.117(3) does not.

(citation omitted). Rather, the scope of the services provided by HHS impacts the State's burden of showing the child cannot be safely returned to the parent's custody. *Id.*; *accord* Iowa Code § 232.116(1)(h)(4) (requiring the court to find that the child cannot be returned to the custody of the child's parents as provided in section 232.102). The father concedes the State has proved by clear and convincing evidence that the child cannot be returned to his custody at the time of the termination hearing. Because the father's incarceration prevents him from taking custody of the child, the State has proved the grounds for termination under section 232.116(1)(h).

Although placement of the child in the legal custody of a relative could affect the decision to terminate parental rights, *see* Iowa Code § 232.116(3)(a) (providing that the court need not terminate parental rights if "[a] relative has legal custody of the child"), section 232.116(3)(a) does not apply because the child is not in the paternal grandmother's legal custody, *see In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014) (declining to apply section 232.116(3)(a) to avoid termination because the child was not in the grandparents' legal custody). To the extent that the court *could* apply the section to save the parent-child relationship *if* the paternal grandmother was the child's legal custodian, we note that it need not do so. *Id.* The court may preserve parental rights based on section 232.116(3)(a) only if it serves the child's best interests. *Id.*

The father claims that any harm in terminating parental rights will be lessened by placing the child with the paternal grandmother. But the record shows that the child has never met the paternal grandmother, who lives in North Carolina. It is hard to conceive how removing the child from the only home he has known

and placing him with a stranger in another state would lessen the detriment of terminating parental rights.

We affirm the termination of the father's parental rights.

**AFFIRMED ON BOTH APPEALS.**