# IN THE COURT OF APPEALS OF IOWA

No. 16-0411
Filed May 11, 2016

**IN THE INTEREST OF J.R., O.R., P.R., AND S.R.,**
**Minor children,**

**M.S., Mother,**
Appellant,

**J.R., Father,**
Appellant.

_____

Appeal from the Iowa District Court for Polk County, Susan Cox, District

Associate Judge.

A mother and a father appeal separately from the order terminating their

parental rights. **AFFIRMED ON BOTH APPEALS.**

Karen A. Taylor of Taylor Law Offices, Des Moines, for appellant mother.

Steven L. Cooper of Cooper, Goedicke, Reimer & Reese Law Firm, P.C.,

West Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant

Attorney General, for appellee State.

Paul L. White of the Juvenile Public Defender's Office, Des Moines,

attorney and guardian ad litem for minor children.

Considered by Vogel, P.J., and Doyle and Bower, JJ.

**DOYLE, Judge.**

M.S., the mother, and J.R., the father, separately appeal the termination of their parental rights to their children J.R., O.R., P.R., and S.R. The mother claims that the State failed to prove the statutory grounds for termination and that she should be granted additional time to work toward reunification. The father claims the juvenile court erred in not granting his motion to continue the termination proceedings. Both claim termination is not in the children's best interests. We affirm the juvenile court's order.

We review termination-of-parental-rights proceedings de novo. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). The three-step statutory framework governing the termination of parental rights is well established and is not repeated here. *See In re P.L.*, 778 N.W.2d 33, 40-41 (Iowa 2010). The juvenile court issued a lengthy, fact-intensive, thorough, and well-reasoned ruling terminating the mother's and the father's parental rights. After carefully reviewing the record and the briefs of the parties, we adopt the findings and conclusions set forth in the juvenile court's order as our own.

The juvenile court terminated the parents' parental rights upon the grounds set forth in Iowa Code section 232.116(1)(f) and (h) (2015). Paragraphs (f) and (h) of section 232.116(1) are essentially the same but for the applicable age of the child and the amount of time the child has been out of the home. *Compare* Iowa Code § 232.116(1)(f) ("The child is four years of age or older" and "has been removed . . . for at least twelve of the last eighteen months"), *with id.* § 232.116(1)(h) ("The child is three years of age or younger" and "has been removed . . . for at least six months of the last twelve months"). Both paragraphs

require the State to prove, by clear and convincing evidence, the child cannot be returned to the custody of the child's parents at the present time. *See id.* § 232.116(1)(f)(4), (h)(4). It is this element of each ground that the parents challenge. Upon our de novo review, we find the State met its burden.

As to the two older children, the mother asserts on appeal that the State failed to prove the children could not be returned her custody "within a relatively short period of time." As to the two younger children, the mother asserts on appeal that the State failed to prove the children could not be returned to her custody "at the present time or within a relatively short period of time." At the hearing the mother testified she was residing at the Fresh Start Women's Facility in Mitchellville and was at least two weeks away from being released from the facility. Asked if she was asking the judge to return her children "today," the mother responded, "No." She agreed the children could not be returned to her at the time of the hearing. She requested an extension of six months.

About a week prior to the termination-of-parental-rights hearing, the father filed a motion to enlarge or amend permanency findings and continue the hearing. Anticipating his release from custody and parole, the father requested an additional six months for reunification. The motion was denied. At the time of the termination-of-parental-rights hearing, the father was incarcerated at the Newton Correctional Facility. He agreed the children could not be returned to him at the time of the hearing. He opined he would be in a position to safely parent the child two weeks after his release from prison. On appeal, he asserts "there is a reasonable likelihood that the children could be returned to [his] care within the next six months."

With regard to the mother, the juvenile court found:

> [The mother] acknowledges that the children cannot be returned to her today. She is living at the Women's Correctional Facility. In order to be discharged, [the mother] must reach level Four. [The mother] plans to be discharged in the next few weeks. The court is not as optimistic . . . . [The mother] has had four major infractions in two months. [The mother]'s problems at the facility have directly impacted her children. Late January 2016, during a visit with the children, [the mother] became upset about the facility rules and began swearing about her probation officer. The court hopes [the mother] has engaged in meaningful reflection, necessary for long term change.
>
> [The mother] currently has two supervised visits with the children per week for two hours. [A service provider] supervises one visit, and [the mother's sister] supervises the other weekly visit. During supervised visits, [the mother] does a good job taking care of the kids and "they appear to enjoy their time with their mom." Recently, [the mother] has been late for visits. [The mother]'s parental ability during a supervised visit, while living under the Department of Corrections supervision, does not equate with minimally adequate parenting. [The mother] still has significant unresolved issues, the same issues as when the children were removed.
> . . . .
> In justifying her request for a six-month extension, [the mother] discusses the random UA's at House of Mercy—"all of which have been clean." This claim directly contradicts [an exhibit]. [The mother] has not provided any random UA's for the House of Mercy.

(Citation omitted.) Finally, in finding the children could not be returned to the mother's custody at the time of the termination hearing, the juvenile court concluded:

> [The mother] is at the Women's Residential Facility. Currently, [the mother] has not fully participated in services. She has missed mental health therapy appointments, House of Mercy substance abuse appointments, and House of Mercy UA testing. Also, [the mother] has been deceitful to law enforcement, [the Iowa Department of Human Services (DHS)], and the court.

Having reviewed the record de novo, we agree the children could not be returned to the mother at the time of the termination hearing. The State proved by clear

and convincing evidence the grounds for termination under section 232.116(1)(f) and (h).

With regard to the father, the juvenile court found:

> Most of the last year, [the father] spent away from his children in prison, jail, halfway houses, or homeless shelters. [The father] was given repeated probation opportunities but continued to violate probation conditions. One probation violation report stated "(i)t is evident [the father] has little regard for his probation rules and has been unsuccessful at community supervision despite all interventions." After repeatedly violating his probation, [the father] was given the "option of Bridges treatment facility but turned it down because his prison sentence was shorter." [The father] has not seen the children in more than six months.
>
> . . . .
>
> "[The father] has reported being diagnosed with depression and anger since the age of 19." [The father] stated that he did "better with medication [that] helps anger and anxiety and depression." DHS reports that [the father] has also been diagnosed as bipolar and has a family history of this disease. [The father] told DHS he has a "history of struggling with anger management and mood swings." [The father] testified that he now realizes his history of anger management and mood swings were caused by drugs. This claim is not supported by the exhibits.
>
> [The father] has admitted to a lengthy drug history. He started using when he was 15-16 years old and is now 24 years old. [The father]'s drug of choice is opiates. In the visits before he was incarcerated, [the father] was highly under the influence. "He did not help with the children unless prompted by [the mother] and the worker." [The father] has participated in treatment in prison— yet testified "right now, I know that I am not an addict." [The father] does not believe that he needs treatment when released from prison.

(Citations omitted.) Finally, in finding the children could not be returned to the father's custody at the time of the termination hearing, the juvenile court concluded:

> [The father] is at Newton Prison and has been away from the children for almost one year because of his ongoing criminal choices. Currently, [the father] has not addressed his domestic violence needs. He does not believe that he is an addict or needs any additional treatment, despite an admitted lengthy drug history.

Having reviewed the record de novo, we agree the children could not be returned to the father at the time of the termination hearing. The State proved by clear and convincing evidence the grounds for termination under section 232.116(1) (f) and (h).

Additionally, although the parents maintain termination of their parental rights is not in the children's best interests, the record clearly demonstrates otherwise. The parents have been given more than ample time to address their issues and demonstrate they could provide a safe, stable, drug-free home for the children. They have not been able to do so. In concluding termination was in the children's best interests and that terminating the parents' parental rights would be less detrimental to the children than the harm caused by continuing the parent-child relationship, the juvenile court stated:

> Since October 2014, these four wonderful children have waited patiently for [the parents] to focus on them, instead of drugs, alcohol, criminality, and dishonesty.
> Their mother has repeatedly abused alcohol—OWI conviction and violation of electronic monitoring rules—yet fails to understand that she has an addiction. Currently, she is not fully participating in substance abuse treatment, testing, or mental health treatment.
> Their father was provided numerous services in the community—including the Salvation Army—yet was unable and/or unwilling to make the necessary changes. He has now not seen his children for almost one year. The father turned down a chance to go to Bridges treatment facility because he wanted to do less time in prison. Despite his significant drug history, [the father] testified "I know that I am not an addict" and does not believe [he] needs additional treatment when released from prison.
> A relative does have custody of the children, but the court continues to find that termination is in the children's best interests. They deserve permanency and not to continue waiting for their parents.
> The court does note a close bond between the mother and the children. The court still finds that termination is in the children's best interests. The children have not lived with their mother for

approximately one year and see her for two supervised visits per week.

We agree termination of the parents' parental rights to these children is in the children's best interests. And, in making this determination, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2).

Finally, for the above reasons, we find an extension of time for the parents to work toward reunification is not warranted. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *P.L.*, 778 N.W.2d at 41; *see also In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) (noting the parent's past conduct is instructive in determining the parent's future behavior). Children are not equipped with pause buttons. "The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). At some point, as is the case here, the rights and needs of the children rise above the rights and needs of the parent. *See In re C.S.*, 776 N.W.2d 297, 300 (Iowa Ct. App. 2009). While the law requires a "full measure of patience with troubled parents who attempt to remedy a lack of parenting skills," this patience has been built into the statutory scheme of chapter 232. *In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000). Our supreme court has stated that "the legislature, in cases meeting the conditions of [the Iowa Code], has made a categorical determination that the

needs of a child are promoted by termination of parental rights*." In re M.W.*, 458 N.W.2d 847, 850 (Iowa 1990). The public policy of the state having been legislatively set, we are obligated to heed the statutory time periods for reunification. We agree any additional time in limbo would not be in the children's best interests.

The children were adjudicated in need of assistance in December 2014, and the statutory time frames for reunification have passed. These children are in need of permanency, and they should not have to wait any longer in limbo while the parents attempt to resolve the issues that led to the adjudication. We conclude a grant of additional time for the parents to work toward reunification is not justified under these circumstances. For these reasons, we affirm the order terminating the mother's and the father's parental rights.

**AFFIRMED ON BOTH APPEALS.**