# IN THE COURT OF APPEALS OF IOWA

No. 17-2073
Filed March 7, 2018

**IN THE INTEREST OF J.M., L.M., and B.M.,**
**Minor Children,**

**SHANNON M. LEIGHTY, guardian ad litem,**
   Appellant.

---

Appeal from the Iowa District Court for Story County, Stephen A. Owen, District Associate Judge.

A guardian ad litem appeals the denial of termination-of-parental-rights petitions concerning three children. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Shannon M. Leighty of the Public Defender's Office, Nevada, appellant.

Patrick C. Peters of Payer, Hunziker, Rhodes & Peters, LLP, Ames, for appellee father.

Daniela Matasovic of Matasovic Law Firm, Ames, for appellee mother.

Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**MULLINS, Judge.**

A guardian ad litem[1] appeals the denial of termination-of-parental-rights (TPR) petitions concerning three children, L.M., B.M., and J.M., born in 2013, 2014, and 2017, respectively. She contends the juvenile court erred in not terminating the parents' parental rights as to all three children pursuant to Iowa Code section 232.116(1)(b), (e), and (*l*) (2017). She also argues the court erred in concluding termination of the parents' parental rights as to the youngest child, J.M., under section 232.116(1)(h) was not in the child's best interests.[2]

## I. Background Facts and Proceedings

The parents and children came to the attention of the Iowa Department of Human Services (DHS) in February 2017 when the mother visited the hospital and tested positive for methamphetamine (meth). The State also alleged that both parents cared for the two older children while under the influence of meth. Shortly thereafter, the mother gave birth to the youngest of the three children and both she and the child tested positive for meth. The mother also tested positive for amphetamines and opiates. In March, the parents stipulated to removal and the children were adjudicated children in need of assistance (CINA).

In April, DHS recommended both parents undergo substance-abuse and mental-health treatment. The father began inpatient substance-abuse treatment but left after a few days. He began outpatient treatment in May, but he did not attend his sessions consistently. He was discharged from the program in July for lack of attendance, having attended only one group session and no individual

---

[1] The guardian ad litem is also designated as the children's attorney.
[2] The State has filed a statement to the court noting its agreement with the guardian ad litem's petition on appeal.

sessions. The mother also began inpatient substance-abuse treatment, but she left the program after about a week. The mother's subsequent attempts to complete an inpatient treatment program were unsuccessful. Neither parent obtained mental-health treatment. Neither parent heeded DHS's recommendation to attend parenting classes.

The father was arrested in Iowa on or about July 19 and was subsequently extradited to Georgia, having had his probation on a charge of credit card fraud revoked in response to his failure of drug tests. His tentative release date was January 18, 2018. His release would be followed by three years of probation, which he would be allowed to serve in Iowa upon his completion of a thirty-day, inpatient-rehabilitation program following his release. The father testified his drug addiction has been "off and on" for the last ten years. The father has not seen his children since the commencement of his incarceration in July. However, in the three months leading up to the termination hearing, he talked to the two older children almost once a week via phone.

In September, the mother moved from Iowa to Georgia to live with her parents. She testified she made the move because she has no support system in Iowa to help her stay clean. Since the move to Georgia, the mother has not had any contact with the children, but she has text messaged their foster placements "to ask how they were." A home study was done on the mother's parents' home, but the Georgia Division of Family and Children Services concluded the home was not a suitable placement for the children, citing a number of concerns. At the time of the termination hearing, the mother was not engaged in any substance-abuse treatment but had plans to start outpatient

treatment in the coming months. She testified she had not used since moving to Georgia.

Both parents were honest with DHS about their drug use throughout the case, which was continuous before the father's incarceration in July and the mother's move to Georgia in September. Before the father's incarceration and the mother's move to Georgia, their visitations with the children were sporadic and the longest period of sobriety either parent was able to attain was eleven days. The parents have not provided any financial support to the children throughout the case. The parents seem to plan to return to Iowa and resume their relationship upon the father's release from jail. Both parents recognize that they each trigger the other's drug use.

Since being placed with their current foster parents, the two older children's behavior has improved, especially since the discontinuance of visits with their biological parents. The children have become integrated into the foster home and are bonded with their foster parents. The youngest child has been placed with her foster mother since she was one month old; the child has a strong bond with her foster mother. Both homes the children are residing in are pre-adoptive placements. There is no bond between the two older children and the youngest child due to lack of meaningful contact. It is undisputed that the parents care deeply for all three children. However, the parents' bond with the children appears to have slightly decreased as the case has progressed.

The State filed termination petitions as to all three children. Following a hearing in November, the juvenile court denied the State's petitions. The court concluded clear and convincing evidence did not support termination under Iowa

Code section 232.116(1)(b) because the father's incarceration and the mother's move to Georgia to obtain sobriety did not amount to intentional acts to abandon or desert the children. As to section 232.116(1)(e), the court concluded clear and convincing evidence did not support a finding that the parents have not maintained significant and meaningful contact with the children during the previous six months. The court also concluded clear and convincing evidence did not support termination under section 232.116(1)(*l*) because the opinions offered by expert witnesses as to each parent's prognosis were stale, having been formulated several months before the termination hearing and not reexamined in light of the parents' recent sobriety. Next, the court concluded the State established clear and convincing evidence to support termination under section 232.116(1)(h) as to J.M. but found it was in the child's best interests to allow the parents an additional six months to work toward reunification. Finally, the court stated its conclusion that, even if it had found clear and convincing evidence to terminate parental rights as to the two older children, it was still in those children's best interests to allow the parents an additional six months to work toward reunification.

As noted, the guardian ad litem appeals.

## II. Standard of Review

Appellate review of TPR proceedings is de novo. *In re A.S.*, ___ N.W.2d ___, ___, 2018 WL 480373, at *4 (Iowa 2018) (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses."

*Id.* (quoting *A.M.*, 843 N.W.2d at 110). Our primary consideration is the best interests of the children. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

**III.    Analysis**

The juvenile court denied the State's petitions to terminate the parents' parental rights to all three children under Iowa Code section 232.116(1)(b), (e), and (*l*). The court alternatively concluded termination is not in the best interests of the children. We may reverse the juvenile court's denial of the State's petitions only if we find clear and convincing evidence supports at least one of the grounds for termination, termination is in the best interests of the child, and no exceptions apply to preclude termination. *See A.S.*, 2018 WL 480373, at *4 (describing three-step analysis in TPR proceedings).

A.    Grounds for Termination

If clear and convincing evidence supports one ground for termination, we need not consider the others. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). In this case, we choose to limit our analysis to Iowa Code section 232.116(1)(e), which allows the juvenile court to terminate parental rights where: (1) the child has been adjudicated a CINA; (2) the child has been removed from the physical custody of the parents for a period of at least six consecutive months; and (3) there is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so.

The State's establishment of the first two elements is undisputed. As to the third element,

> "significant and meaningful contact" includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent. This affirmative duty, in addition to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and requires that the parents establish and maintain a place of importance in the child's life.

Iowa Code § 232.116(1)(e)(3).

It is undisputed that, in the six months leading up to the termination hearing, the parents provided no financial support to the children. Obviously, the father's incarceration limited his ability to provide financial support to his children, but he failed to provide financial support to the children even before his incarceration, as did the mother during the entire six-month period. Rather than provide financial support to their children, it appears the parents directed any and all of their resources at fueling their drug addictions.

On September 12, 2017, the juvenile court held a hearing and in its permanency order made these findings:

> Both parents attempted inpatient substance abuse treatment but left after only a couple of weeks. There is also a history of domestic violence in the family. Since May the parents have been offered 38 opportunities to visit with the children but have only visited 13 times. In July the parents attended one visit together and the father attended one visit alone. In August the mother visited with the children one time. The parents sold their vehicle in order to obtain money to purchase drugs rather than support their children. The children remain placed in foster care.
>
> The parents have been offered a multitude of services to address drug abuse and housing instability. They have been uncooperative with services and have not visited with their children. In July and August of 2017 they visited with the children a grand total of three times. The father has been extradited to the state of Georgia to face criminal charges. The behavior of the older two children declined significantly between visitations as a result of the parents' inconsistent contact and visitation with the children. The parents in attentiveness to visitation [leads] the court to conclude

that they continue to neglect their children. Services are needed for [the older two children] to address emerging behaviors that are of growing concern.

. . . . The parents have done absolutely nothing to cooperate with the case permanency plan and have instead continued their severe and chronic substance abuse. The court can point to no substantive or material progress that the parents have made, nor can it point to any substantial or material circumstances currently being experienced by the parents that would suggest an additional period of six months would assist in the goal of reunifying the children with their parents. The parents simply choose drugs and criminal behavior over their children leading to neglect of the children by the parents.

(Footnote omitted.)

The order also directed the county attorney to institute TPR proceedings pursuant to section 232.104(2)(c). On our de novo review of the entire record, we agree with the findings of the juvenile court through the time of the permanency hearing and incorporate them as our own. So, our analysis of section 232.116(1)(e) now focuses on what, if anything, changed between the September 12 permanency hearing and the November 28 termination hearing.

Although the parents have, as the juvenile court characterized in its order denying the termination of parental rights, demonstrated a "continuing interest" in the children, section 232.116(1)(e)(3) requires more than "interest." At the time of the termination hearing, the mother had not had any direct contact with any of the children for more than two months; that is, since the permanency hearing. Her texts to the foster parents showed some "interest" in the children, but she made no efforts to contact the children. Even when she came to Iowa for the termination hearing, she had made no prior arrangements to see her children. At the hearing she testified, "Hopefully . . . I can get a visit with the kids," but she later said: "I don't know what I should do, because I miss them. And I haven't

seen them in months, but if I see them, then I'll hurt them more, and I'll be hurting myself." The father had not seen his children since the commencement of his incarceration, but in the three months leading up to the termination hearing, he talked to the two older children almost once a week via phone. The parents' contact with the children in the six months leading up to the termination hearing can hardly be described as significant and meaningful. *See In re D.W.*, No. 17-0281, 2017 WL 1735934, at *3 (Iowa Ct. App. May 3, 2017) ("'Significant and meaningful contact' is defined as more than just visitation, it requires 'a genuine effort to complete the responsibilities' set forth in the case permanency plan, to communicate with the child, and to 'establish and maintain a place of importance in the child's life.'" (quoting Iowa Code § 232.116(1)(e)(3))); *In re T.B.V.*, No. 08-1222, 2008 WL 4531554, at *2 (Iowa Ct. App. Oct. 1, 2008) ("[S]ection 232.116(1)(e) requires more than the minimum efforts . . . to maintain significant and meaningful contact.").

It was not until the parents found themselves in controlled environments, the father in jail in Georgia and the mother living with her parents in Georgia, that the parents exhibited any form of compliance with the case permanency plan, including showing an interest in their children. We recognize that, as a result of their controlled environments, both parents were experiencing a period of sobriety in the months leading up to the termination hearing. But parents cannot wait until the eve of termination to begin to express an interest in parenting. *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2001).

Based on the foregoing, we conclude clear and convincing evidence exists to support termination of the parents' parental rights as to all three children under

Iowa Code section 232.116(1)(e), and reverse the juvenile court on this ground. We agree with the juvenile court that clear and convincing evidence supports termination of the parents' parental rights as to the youngest child under section 232.116(1)(h).

B. Best Interests and Statutory Exceptions

"If we determine 'that a ground for termination has been established, then we determine whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights.'" *A.S.*, 2018 WL 480373, at *4 (quoting *In re M.W.*, 876 N.W.2d 212, 219–20 (Iowa 2016)). In considering whether termination is in a child's best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2).

It is undisputed that both parents share a strong bond with the two older children and that the severance of those bonds may be difficult for the children. The bond between the youngest child and the parents is more limited given the child's young age coupled with the fact the child has been removed from the physical custody of her parents for most of her life. In its lengthy findings on the best-interests issue, the juvenile court provided these findings and analysis:

> The CINA proceedings are less than one year old and in fact only began about nine months ago in late February 2017. A dispositional order entered a mere six months prior to the hearing on the termination of parental rights. As shown by her date of birth on the petition, the mother is only 23 years of age. Her drug problems commenced when she was but 14 years of age. The father is 29 years of age as shown by his date of birth on the petitions and his drug problems commenced approximate[ly] seven years ago when he was 22 years of age. The parents have drug

abuse problems that are years in the making. It is unreasonable to think that those problems would be completely addressed within six months. Consequently it is unreasonable to conclude that their parental rights should be terminated in the absence of an appropriate opportunity to meet the case plan goals in a reasonable amount of time under the circumstances. The children deserve permanency but also deserve an opportunity to have a life with their parents. [It is i]n the children's best interest to continue the permanency order for an additional period of six months in order to provide the parents an opportunity to reunify with their children [by] attaining sobriety and stability.

The parents are in the early stages of attaining sobriety and stability. Although it has come about through his arrest and incarceration, the father has now been attend[ing] to his mental health needs and is receiving medication management and psychotherapy. He is now in the longest period of sobriety known to this court and has testified credibly to the clarity of mind he now is possessed of and the recognition of the goals he must attain in order to reunify with his children. He has attained such a great degree of stability that he recognizes the codependent relationship he has with [the mother] and now appropriately identifies additional services to include individual and family therapy to assist them in their relationship—a factor and service as yet unrecognized by the court and Iowa DHS in fashioning reasonable efforts. The court finds the father has identified an additional reasonable effort that should be provided and then an additional period of six months should be permitted in order to provide a reasonable opportunity for [the father] and [the mother] to engage in appropriate therapy to explore, address and treat their codependent marital relationship.

[The mother] too is in the early stages of attaining sobriety and stability. She [has] found current although temporary stability in the home of her parents. Here she has their support and access to private insurance which will assist her in accessing appropriate substance abuse treatment. Although consequential, her decision to leave the state of Iowa was not reasonable under the totality of her circumstances. In fact it could be viewed as the first step in breaking a cycle of chronic, severe and tragic drug addiction. The FSRP worker reported that [the father] believed his wife was trading sexual favors for drugs. [The mother] admitted to residing in the home with persons supplying her with drugs before she left the state of Iowa. Both [the mother] and [the father] have a demonstrated history of nearly complete honesty when reporting their drug activities and therefore this court concludes that [the mother] is not only the victim of severe and chronic substance abuse but likely a victim traumatized by the collateral effects of sexual abuse related to her drug abuse and of those who would prey upon her vulnerabilities.

. . . . While the children have developed a close relationship with [the] foster parents, the court cannot conclude that given the history of the bond between the older children and their parents, that the parent-child bond between the . . . children and their parents has been destroyed beyond the possibility of repair. [J.M.] is less than the one year of age and because she has been in the care and custody of a devoted and loving foster mother, she does not suffer the harmful effects of neglect in the very earliest and critical stages of her life. Consequently the real possibility of developing an appropriate and close parent-child bond with her biological parents continues to exist.

Problematic is the parents' chosen course of conduct since DHS initially became involved in these children's lives. These parents have been given multiple opportunities to put their children first and obtain and maintain sobriety. The parents were unable to obtain sobriety until they were physically separated by the father's incarceration and the mother leaving Iowa, where she is admittedly unable to stay clean. The record reveals, however, upon the father's release the parents are likely to resume their relationship and return to Iowa. "We hold no crystal ball, and to some extent, the [best-interests] determination must be made upon past conduct." *In re M.M.*, No. 16-1685, 2016 WL 7395788, at *4 (Iowa Ct. App. Dec. 21, 2016). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re A.B.*, 815 N.W.2d 764, 777 (Iowa 2012) (quoting *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010)). "[A]t some point, the rights and needs of the children rise above the rights and needs of the parent." *In re C.S.*, 776 N.W.2d 297, 300 (Iowa Ct. App. 2009).

At the same time, we recognize that juvenile court is premised on a belief that rehabilitation is possible. Juvenile court judges and appellate courts do their

best to predict the future, taking into account the past and present. Given the relatively short period of DHS involvement and supervision in this case and the juvenile court's extensive credibility findings and careful analysis of the particulars of this case, we do not find the evidence is clear and convincing that termination would be in the best interests of the children at the time of the termination hearing.

Thus we affirm the juvenile court's conclusion that it would not be in the best interests of the children to terminate parental rights.

## IV. Conclusion

We reverse the juvenile court's determination that the State failed to satisfy the statutory grounds for termination under section 232.116(1)(e), but we affirm in all other respects. We reverse in part and remand the case to the juvenile court for further proceedings in accordance with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**