# IN THE COURT OF APPEALS OF IOWA

No. 18-0283
Filed May 2, 2018

**IN THE INTEREST OF A.B.,**
**Minor Child,**

**D.B., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Dallas County, Virginia Cobb, District

Associate Judge.


A father appeals the termination of his parental rights to his minor child.

**AFFIRMED.**


Bryan J. Tingle of Tingle Law Office, Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney

General, for appellee State.

Kayla A. Stratton of Juvenile Public Defender Office, Des Moines, guardian

ad litem for minor child.


Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**MULLINS, Judge.**

A father appeals a juvenile court order terminating his parental rights to his minor child, born in 2009.  The father contends the juvenile court erred in (1) finding clear and convincing evidence supported the statutory grounds for termination, (2) concluding termination is in the child's best interests, and (3) declining to apply a statutory exception to termination.

**I.       Background Facts and Proceedings**

This child and his parents came to the attention of the Iowa Department of Human Services (DHS) in December 2015 upon information that the mother stabbed the father with a knife while in the presence of the child.  This altercation stemmed from an argument concerning the father's contact with an ex-girlfriend, V.B., who was pregnant with the father's child at the time.  The stabbing allegation was confirmed, and further investigation revealed a history of domestic violence between the parents.  The State filed a child-in-need-of-assistance (CINA) petition in February 2016, alleging the child had been exposed to domestic violence in the home.  In April, the juvenile court adjudicated the child a CINA pursuant to Iowa Code section 232.2(6)(c)(2) (2016).  The juvenile court placed the child with the father and ordered the father to not allow contact between the child and V.B.  The mother was allowed visitation at the discretion of DHS.

In July, the State filed an application to change the child's placement, alleging the father violated the court's previous order by allowing V.B. "to supervise and otherwise be around the child."  On July 11, following an evidentiary hearing, the juvenile court removed the child from the father's care and placed him with his paternal aunt.  In its July 19 modification-of-placement order, the court noted:

> Placement outside the parental home is necessary because continued placement in or a return to the home would be contrary to the child['s] welfare due to father disobeying the no contact order of the court, and the parents causing mental stress on the child by putting him in the middle of their adult issues.

The father appealed this order. A panel of this court affirmed the juvenile court's modification of placement, concluding "the transfer of custody to his aunt was necessary to protect A.B. from further harm." *In re A.B.*, No. 16-1267, 2016 WL 5408263, at *3 (Iowa Ct. App. Sept. 28, 2016).

In December, the State again moved to modify placement of the child, alleging the child's aunt had not taken the child to discovery therapy, had not been consistent with giving the child his medication, and engaged in inappropriate conversations with the child. The juvenile court granted the motion and transferred custody of the child to DHS for placement in foster care.

In June 2017, the State filed a third application to modify placement of the child, noting "the child has had successful overnight visits with the mother and is currently on an extended home visit." On June 28, the juvenile court returned the child to his mother's custody, subject to DHS supervision. In August, however, DHS applied for removal, alleging the mother allowed contact between the child and a violent individual, despite being directed by DHS to prohibit such contact. On August 24, the juvenile court removed the child from the mother's care, finding the "mother has allowed the child to have contact with a man who was recently released from prison for abusing his own child." The court transferred custody of the child to DHS for placement in foster care.

In July, after the child had been returned to the mother but before the August removal, the State petitioned to terminate the father's parental rights. In

November, the juvenile court entered an order terminating the father's parental rights pursuant to Iowa Code section 232.116(1)(d), (f), and (g) (2017).  The father filed a motion to reconsider, enlarge, or amend in which he argued termination was inappropriate as to each ground.  As to paragraph (d), the father argued "the underlying adjudication was limited to a finding under Iowa Code section 232.2(6)(c)(2) and the necessary adjudication was not found under Iowa Code section 232.2(6)(b)."  *See In re J.S.,* 846 N.W.2d 36, 41 (Iowa 2014) ("[A] CINA determination under section 232.2(6)(b) may lead to termination of parental rights under section 232.116(1)(d), whereas a CINA determination under section 232.2(6)(c)(2) cannot.").  As to paragraph (f), the father argued the return of the child to the mother from June to August of 2017 negated the State's establishment of the statutory-timeframe element contained in section 232.116(1)(f)(3).  Finally, as to paragraph (g), the father argued that, at the time the matter was submitted, no final order terminating his parental rights as to his other child had been entered and the evidence was therefore insufficient to support termination on that ground.  *See* Iowa Code § 232.116(1)(g)(3).

In its subsequent ruling, the juvenile court agreed with the father concerning his argument under paragraph (d).  The court confirmed its ruling under paragraph (f) but did not elaborate on its ruling under paragraph (g).  As noted, the father appeals.

## II.      Standard of Review

Appellate review of termination-of-parental-rights proceedings is de novo. *In re A.S.,* 906 N.W.2d 467, 472 (Iowa 2018) (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)).  "We are not bound by the juvenile court's findings of fact, but

we do give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *A.M.*, 843 N.W.2d at 110). Our primary consideration is the best interests of the child. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

**III.     Analysis**

    A.     Sufficiency of the Evidence

The father contends the juvenile court erred in finding clear and convincing evidence supported termination of his parental rights. "On appeal, we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). We focus our analysis on section 232.116(1)(f).

Pursuant to that section, the juvenile court may terminate parental rights where the court finds all of the following have occurred: (1) the child is four years of age or older; (2) the child has been adjudicated a CINA; (3) the child has been removed from the physical custody of the parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days; and (4) there is clear and convincing evidence the child cannot be returned to the parent at the time of the termination hearing. Iowa Code § 232.116(1)(f); *see also A.M.*, 843 N.W.2d at 111 (indicating the statutory language "at the present time" contained in subsection (f)(4) refers to the time of the termination hearing).

The father only challenges the State's establishment of elements three and four. As to element three, he argues the child "was removed from his parents for less than 12 months; and more importantly there was a trial period with a return of the child to the mother's home for approximately 57 days, well in excess of the

requisite 30 day trial period."  As the State points out, the statute allows for two ways for the statutory timeline to be met—the child has been removed from the physical custody of the child's parents for either (1) "twelve of the last eighteen months, *or*" (2) "for the last twelve consecutive months and any trial period at home has been less than thirty days."  Iowa Code § 232.116(1)(f)(3) (emphasis added); *see also Deal v. Coleman*, 751 S.E.2d 337, 341 (Ga. 2013) (noting legislative use of a "serial comma—followed immediately by the disjunctive 'or'" creates "separate and distinct" statutory phrases).  The child was removed from the father's care on July 11, 2016.  The child was returned to the mother's care on June 28, 2017, but was removed on August 24.  Removal continued until the commencement of the termination hearing on September 25.  The child was therefore "removed from the physical custody of [his] parents for" twelve months and eighteen days "of the last eighteen months"—we therefore conclude this element is satisfied.  *See* Iowa Code § 232.116(1)(f)(3).

Next, the father contests the juvenile court finding that the child could not be returned to his care at the time of the termination hearing.  His argument on this issue is limited to the following:

> [T]he father has been working on his relationship issues and other concerning issues . . . in his continued therapy . . . .  The father also has maintained a residence for himself and the child [in] which he had a room prepared for his son's return to his care and custody.  The father also maintained continued employment throughout the juvenile court proceedings and clearly was in a position financially to provide for his son.

That the father has maintained employment and stable housing throughout this case and can financially provide for his son is undisputed, but what led to termination was the father's lack of progress in gaining insight into the child's

needs. He remains unable to recognize how his successive relationships with women whose lives are unstable and chaotic is detrimental to the child. We recognize the father has regularly participated in individual therapy throughout the case. But he was generally untruthful with his therapist about many of the concerning issues. The therapist indicated at the termination hearing that the father is still unable to fully understand whether a potential girlfriend would be a good person to be around the child or not.

Although the father has been relatively consistent in attending visitation with the child since the child was removed from his care, the father has been unable to progress beyond supervised visitation because, according to the testimony of the DHS caseworker, he "has struggled continuously being able to have insight as to appropriate relationships," "[h]e has struggled with being appropriate at visits," and he "has at times became angry and inappropriate during visits." A Family Safety, Risk, and Permanency (FSRP) services worker additionally provided the father's interaction with the child during visitation is limited. When asked whether the father has made any progress on his ability to interact with the child during visits, the FSRP worker responded, "Little to none." The father has also acted out in an aggressive manner toward the FSRP worker during visits, in the presence of the child. The child picks up on and replicates this behavior.

Despite going through the motions, the father continues to struggle with grasping the concept of healthy relationships, gaining insight into the child's needs, and understanding the appropriateness necessary in a parent-child relationship. One of the main issues in this case has been the father's ongoing relationships with women who should not be around the child. The father continues to engage

in these relationships while lying to DHS about their existence. The father conceded in his testimony at the termination trial that he has been dishonest with DHS about his intimate relationships throughout the life of the case, but he asserted he was ready to start being honest. Then the father testified at the hearing that he ended his relationships with all of the women DHS was concerned about, yet conceded the tattoo on his wrist of one of these women's names was only a week old.

Due to the father's lack of progress coupled with the fact that he was unable to even progress beyond supervised visitation, we conclude there is clear and convincing evidence the child could not be returned to the father's care at the time of the termination hearing. We therefore find the evidence sufficient to support termination under Iowa Code section 232.116(1)(f).

B.      Best Interests of the Child

The father contends termination is not in the child's best interests. The father specifically contends he and the child share a "strong bond" and severance of the parent-child relationship would be detrimental to the child. He also contends it is not in the best interests of the child to terminate his, but not the mother's, parental rights.

"In considering whether to terminate the rights of a parent . . . [we] give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). "We hold no crystal ball, and to some extent, the [best-interests] determination must be made upon past conduct." *In re M.M.*, No. 16-1685, 2016 WL 7395788, at *4 (Iowa

Ct. App. Dec. 21, 2016). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re A.B.*, 815 N.W.2d 764, 777 (Iowa 2012) (quoting *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010)). "[A]t some point, the rights and needs of the children rise above the rights and needs of the parent." *In re C.S.*, 776 N.W.2d 297, 300 (Iowa Ct. App. 2009).

Although the record indicates a bond does exist between the father and child, that bond cannot be described as a healthy one. The bond can be better characterized as strained, likely as a result of the father's impulsive, controlling, and manipulative tendencies. Due to the father's behavior, the parent-child relationship lacks openness and trust and the child has stated he is, at times, scared of the father and does not feel comfortable talking to him. The relationship between the father and child has been more negative than positive. As to the father's argument that termination of his, but not the mother's, parental rights is not in the child's best interests, we note that if reunification is achieved by the mother, it is still in this child's best interests that the father's rights be terminated. The toxicity of the parents' relationship and history of domestic abuse, which was fueled by the father's impulsive, controlling, and manipulative tendencies, is where this case began. To allow the father to remain in the picture in the event the mother achieves reunification is not in this child's best interests.

We conclude termination of the father's parental rights is in this child's long-term best interests.

C.      Statutory Exceptions to Termination

The father finally argues the court erred in declining to apply the statutory exceptions to termination contained in Iowa Code section 232.116(3)(a) and (c). The application of the statutory exceptions to termination is "permissive not mandatory." *In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (quoting *A.M.*, 843 N.W.2d at 113).

Under section 232.116(3)(a), "[t]he court need not terminate the relationship between the parent and child if . . . [a] relative has legal custody of the child." At the time of the termination hearing, no relative had legal custody of the child, as legal custody was placed with DHS when the child was removed from the mother. This exception is therefore inapplicable.

Under section 232.116(3)(c), the court may decline to terminate parental rights where "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." The record contains scant, let alone clear and convincing, evidence that severance of the parent-child relationship would be detrimental to the child. We therefore find the application of this exception inappropriate.

## IV.     Conclusion

We find the evidence sufficient to support termination under Iowa Code section 232.116(1)(f), termination is in the best interests of the child, and no exceptions apply to preclude termination. We therefore affirm.

**AFFIRMED.**