# IN THE COURT OF APPEALS OF IOWA

No. 24-0495
Filed May 22, 2024

**IN THE INTEREST OF L.G.,**
**Minor Child,**

**M.G., Mother,**
     Appellant.

_____

Appeal from the Iowa District Court for Marion County, Steven Guiter, Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Dusty Lea Clements of Clements Law and Mediation, Newton, for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Aaron H.R. Ginkens, West Des Moines, attorney and guardian ad litem for minor child.

Considered by Ahlers, P.J., and Chicchelly and Buller, JJ.

**CHICCHELLY, Judge.**

A mother appeals the termination of her parental rights to her child. She challenges the efforts to return the child to her custody and the grounds for termination. She requests more time to show the child can be returned to her and contends termination is not in the child's best interests. After a de novo review of the record, *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021), we affirm.

**I. Background Facts and Proceedings.**

The child came to the attention of the Iowa Department of Health and Human Services (HHS) when he was born in December 2022. Both the mother and the child tested positive for amphetamines, methamphetamine, and marijuana. The mother admitted using methadone and a product containing THC during her pregnancy but denied she knowingly used methamphetamine. The juvenile court removed the child from the mother's custody, and the State petitioned to the court to adjudicate the child to be a child in need of assistance (CINA). The court granted the CINA petition in March 2023 based on concerns about the mother's mental health and substance use.

The mother has a long history of substance use and is diagnosed with severe opioid use disorder. She was thirty-four years old at the time of the termination hearing, and she testified that she began using controlled substances as teenager and has used opiates and marijuana steadily since her early twenties. The mother was in substance-use treatment at least eight times before the child was born. In 2020, the juvenile court terminated her parental rights to her first child based on her substance-use issues.

After L.G.'s birth, the mother twice entered in-patient treatment and was unsuccessfully discharged for substance use. Both times, the child was placed in the mother's care during her treatment and removed on her discharge. The first attempt lasted almost six months, the mother's longest period of sobriety since she began using controlled substances. It ended when the mother smoked marijuana while on a pass from the facility three months after the child was placed with her. The second attempt lasted only two months, with the mother using methamphetamine two weeks after the child was placed with her. The mother was without housing for two months while using methamphetamine and heroin. She had no contact with the HHS for one month and no visits with the child for two months. Her visits resumed only after she returned to treatment in late October.

The State petitioned to terminate the mother's parental rights in January 2024. At the termination hearing, the mother testified that she had not used any controlled substances since returning to in-patient treatment in October 2023. She also testified that she was near completing the first phase of the three-phase program, the farthest she has gone in treatment, and asked the court to grant her six more months to address her substance-use issues. But the court determined that six months was not enough time and terminated the mother's parental rights under Iowa Code section 232.116(1)(e) and (h) (2024).

**II. Discussion.**

**A. Reasonable Efforts.**

We begin with the mother's claim that the HHS failed to make reasonable efforts to return the child. *See* Iowa Code § 232.102(6) (requiring that the HHS "make every reasonable effort to return the child to the child's home as quickly as

possible consistent with the best interests of the child").  The mother bases her argument on the HHS worker's testimony at the termination hearing:

> Q. So let me just ask you, when [the mother] went to treatment in October of 2023, what could she have done differently since then to not be at termination right now?  A. Can you reword that?
>
> Q. Well, what could she have done, right, to not be sitting here today that she hasn't done since October?  A. I don't believe I know how to answer that.
>
> Q. Okay. . . .   Were we looking at termination back in September?  A. Based on the history of this case, yes.
>
> Q. Okay.  And you would agree with me that her going to treatment in October didn't change the mindset of that?  A. It probably relaxed it somewhat, the mindset.
>
> Q. But nothing has moved forward since October, you would agree with that?  A. Correct.
>
> Q. Even though she has actively engaged in mental health since October, she has actively engaged in substance abuse since October, and she's actively engaged with [family centered services] FCS since October, would you agree with all of that?  A. I would agree it's a repeat.
>
> Q. But she's doing what you're asking her to do, right? A. Correct.
>
> Q. So, again, what could she or should she have done to not be sitting here at termination?  A. I would say the answer to that would be not to use with your child the first two times you were in treatment since he was born.
>
> Q. Okay.  But you would agree with me that most substance abuse providers will say relapse is a part of recovery, right?  A. Yes.
>
> Q. So it's, frankly, to be expected that an addict would relapse and leave multiple treatment programs, correct?  A. I don't know if I agree with that.
>
> Q. Okay.  But she went back to treatment on her own in October?  A. She did.
>
> Q. Okay.  And she has been sober since then, correct?  A. It's my understanding, yes.
>
> Q. Okay.  And if you can't say what she could have done differently to not be sitting at termination, how do we expect her to know what she could have done differently?  A. I have no answer for that.

During cross-examination by the guardian ad litem, the worker clarified that the ten times the mother has relapsed following treatment shows "she doesn't have a very good history of being able to maintain her sobriety."

Although the reasonable-efforts requirement continues until there is a final written termination order, the supreme court has clarified that the "obligation to provide reasonable efforts until a final written termination order does not necessarily require [the State] to provide reasonable efforts toward *reunification*." *In re L.T.*, 924 N.W.2d 521, 528 (Iowa 2019). "If returning the child to the family's home is not appropriate or not possible, reasonable efforts shall include the efforts made in a timely manner to finalize a permanency plan for the child." Iowa Code § 232.102A(1)(a). To determine whether reasonable efforts were made, the court considers "[t]he type, duration, and intensity of services . . . provided to the child and the child's family" and "[t]he relative risk to the child of remaining in the child's home versus removal of the child." *Id.* § 232A(1)(a)(1)–(2).

In the termination order, the juvenile court listed the services provided to the family. It then found that returning the child to the mother's custody at the time of the termination hearing would subject the child to adjudicatory harm, noting the mother has not shown she can care for the child outside of a residential treatment facility or maintain her sobriety while in treatment and caring for the child. We concur with the court's assessment.

The mother claims the HHS failed to make reasonable efforts because "the worker acknowledged that he had never been to her residence at House of Mercy, and he had only met with her once during the life of the case." But to preserve error, a parent must inform the juvenile court of any complaints about the adequacy of the services before the termination hearing. *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002). The mother failed to do so. Even so, the reasonable-efforts requirement is not a strict substantive requirement for termination. *L.T.*, 924

N.W.2d at 527. The scope of the services provided impacts the State's burden of proving the children cannot be safely returned home. *Id.* We turn then to the mother's challenge to the grounds for termination.

**B. Grounds for Termination.**

The mother challenges the grounds for terminating her parental rights. Because the juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(e) and (h), we may affirm if clear and convincing evidence supports termination on either ground. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).

The court may terminate under section 232.116(1)(h) when a child is three or younger, has been adjudicated CINA, and has been removed from the parent's custody for six months. *See* Iowa Code § 232.116(1)(h)(1)–(3). The mother challenges the final element of section 232.116(1)(h): "the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time." *Id.* § 232.116(1)(h)(4). Under section 232.102(6), a child cannot be returned to the parents if the child will suffer harm that would justify a CINA adjudication. "[A]t the present time" means at the time of the termination hearing. *See In re A.B.*, 956 N.W.2d 162, 168 (Iowa 2021) (interpreting the phrase as used in Iowa Code section 232.116(1)).

The mother argues that the child could be returned to her custody because the evidence at the termination hearing shows she was in in-patient treatment where she "has a family style room and everything needed to meet the child's daily needs." But the mother has been in this position twice before during the CINA proceedings and relapsed. Her inability to maintain sobriety during in-patient

treatment does not bode well for her ability to remain sober without supervision or the ongoing involvement of the HHS. *See W.M.*, 957 N.W.2d at 313 ("A long history of substance abuse, repeated relapses, and demonstrated inability to maintain sobriety outside a supervised setting demonstrates the children could not have been returned to [the mother's] care at the time of the termination hearing."); *In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014) (affirming termination of parental rights under Iowa Code section 232.116(1)(h) because "the record indicates that after a year of services, the parents were still not in a position to care for A.M. without ongoing [HSS] involvement"). This finding is strengthened by considering the mother's overall history, which includes eighteen years of substance use, eleven attempts at treatment, and a period of sobriety no longer than six months at best. One year after the CINA adjudication, the mother was in no better position to resume custody of the child. Because clear and convincing evidence shows that returning the child to the mother's custody at the time of the termination hearing would expose the child to the type of harm that would lead to a CINA adjudication, the State proved the grounds for termination under section 232.116(1)(h).

**C. Request for More Time.**

The mother asks for more time under Iowa Code section 232.104(2)(b), which allows the court to continue a child's placement for six months if doing so will eliminate the need for the child's removal. She argues that her current stint in treatment, which began on October 24, differs from her past attempts:

> Q. How can you assure the Court this time is different and you truly are ready to be sober? A. The first thing that comes to mind is just the fact that when I lost [the child's father] on November 3rd of

2023, I was in House of Mercy, and I was able to cope and utilize every person, group, just all—all of the people that I have in my support group and everything that I have learned, my coping skills, to not pick up an illegal substance to cope with that death and before then when I've lost somebody, I had self-medicated and self-sabotaged. This time I did not and just the fact that I keep trying, like, because I want this, and that's why I have continually been in treatment trying, and I'm just trying to make sure every—everything that I can do I am doing including taking care of my mental health and diving into past traumas because that's something I've never done, but that's very—the farther back you can go, the better—the better and so just being involved in all those closed groups and completing them. I brought all my certificates with me, and I have ten. Last time I was there I only had two certificates of completion.

Q. And obviously after [the child's father] died in early November, you could have left— A. Easily.

Q. —correct? Certainly could have self- medicated, and is it fair to say you're pretty proud of yourself— A. Very proud.

Q. —that you didn't do any of those things? A. Yes.

Before granting a parent additional time, the court must find "the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). The record before us does not support such a finding. Although we commend the mother on her recent progress, our outlook remains cautious. At the time of the termination hearing, the mother was finishing the first and most restrictive phase of a three-phase program.[1] The mother testified that the time it would take her to complete the second phase is not predetermined: "I mean, it's really up to me and how fast I get assignments done. There's closed groups that I have to complete before I can get to the next phase so, I mean, it could be, you know, four months." Assuming the mother is

---

[1] The mother testified that during Phase 1, program participants can only leave the facility on a recovery-based pass for four hours per week. In Phase 2, participants can work or go to school. They can also get a daily four-hour pass to leave the facility for reasons unrelated to their recovery. During Phase 3, participants do not need a pass to leave the facility and "there's just more freedom, a lot more freedom."

successful, the record does not indicate how long it will take to complete the final phase of the program.[2] Based on how long the mother took to complete Phase 1 and her estimate of how long it will take to complete Phase 2, we doubt that the mother could finish treatment in six months. Even so, the mother needs time to show she can maintain sobriety outside of treatment before the child can be returned to her care. Because the record does not show the need for the child's removal will no longer exist if permanency is delayed, we deny the mother's request for more time.

### D. Best Interests.

Finally, the mother claims that termination is not in the child's best interests. In making the best-interests determination, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). In other words, "we look to the child's long-range as well as immediate interests, consider what the future holds for the child if returned to the parents, and weigh the child's safety and need for a permanent home." *L.T.*, 924 N.W.at 529 (cleaned up).

The mother cites her love for and bond with the child as the primary reason to find termination is not in the child's best interests. Although we do not doubt her claim about her love or their bond, we give it less weight than we give to the child's need for a safe and permanent home. *Id.* ("[T]he interests of the child take precedence over family reunification."). The child was removed from the mother's

---

[2] The mother testified that she could stay at House of Mercy for up to two years.

custody at birth and has spent roughly four months total in the mother's care during two placements. After his removal in August 2023, the mother and the child did not have contact for over two months. Visitation resumed when the mother returned to in-patient treatment in October, but the visits remained fully supervised and lasted only one to two hours per week. In contrast, the child had been in his foster care placement for nine months at the time of the termination hearing. He was integrated into the family, and they would like to adopt the child. The HHS and guardian ad litem agreed termination was in the child's best interests. Considering the child's age, the time he has spent out of the mother's care, his need for permanency, and the uncertainty of the mother's sobriety based on past performance, we agree termination is in the child's best interests. *See In re B.H.A.*, 938 N.W.2d 227, 233 (Iowa 2020) (noting that the mother's past performance indicates the quality of care she can provide in the future); *A.M.*, 843 N.W.2d at 112 ("[W]e cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." (citation omitted)); *In re C.S.*, 776 N.W.2d 297, 300 (Iowa Ct. App. 2009) (recognizing that "at some point, the rights and needs of the children rise above the rights and needs of the parent").

We affirm the termination of the mothers' parental rights.

**AFFIRMED.**